Statement of the Case.
NICHOLLS, J.
In the petition of John F. Ryan applying for relief herein it is alleged:
“That he is the father and only surviving parent of Frances Elizabeth Ryan, a minor, aged 13 years. That he is her natural tutor, and as such entitled to her care, custody, and control. That her mother is dead. That one Edward Peter, residing at Chalmette, in the parish of St. Bernard, has said minor girl, Frances Elizabeth Ryan, in his custody and control, and is detaining her from your petitioner without right, cause, or warrant of law. That he has demanded the surrender to him by the said Peter of his said daughter, and that said. Peter refused to surrender her, but persists in keeping her confined, as set out above.
“Petitioner further shows that, on the 16th day of June, 1909, petitioner‘presented to Hon. R. Emmett Hingle, judge of the Twenty-Ninth judicial district of the state of Louisiana, in which district is situated the parish of St. Bernard, a petition for a writ of habeas corpus in due form of law, praying that said judge issue a writ of habeas corpus to the said Edward Peter, directing and commanding him to produce said Frances Elizabeth Ryan before said judge at a time and place to be fixed by said judge, together with the reason and cause of her detention by him before the said judge at the stock landing in St. Bernard parish on the 3d day of July, 1909, and there make answer to said writ as the law directs. That he caused said writ to be served upon the said Edward Peter by the sheriff of the parish of St. Bernard. That upon said 3d day of July, 1909, he repaired to the stock landing in the parish of St. Bernard with his witnesses and counsel to prosecute said writ. That said Edward Peter was there with the said minor child, Frances Elizabeth Ryan. That the Hon R. Emmett Hingle, judge aforesaid, together with the clerk of his said court, was there. That said R. Emmett Hingle, judge as aforesaid, then declared that he would not compel the respondent, Edward Peter, to answer said writ on so short notice, the sheriff of the parish of St. Bernard having failed to serve said writ until the morning of said July 3d, and thereupon continued said hearing until the 10th day of July, 1909, at the same place.
“That upon said 10th day of July, 1909, he, accompanied by his counsel and his witnesses, repaired to said stock landing, prepared to prosecute said writ. That the defendant, Edward Peter, again appeared, bringing with him said minor child, and through his counsel presented to the said judge a pretended response to said writ in which he set up that he had detained said child from petitioner, for the reason that petitioner was not a proper person to have charge of said child. That petitioner, through his counsel, objected to said return. That petitioner was a citizen and resident of the parish of Orleans. That the domicile of the said child was the parish of Orleans, and that the court of said domicile, to wit, either the civil district court for the parish of Orleans or the juvenile court for said parish of Orleans, were the only courts which had and possessed jurisdiction to pronounce upon, the fitness of petitioner to have the custody and control of his daughter, and moved the court to strike from the response in the writ as much thereof as set up said charge. That said Hon. R. Emmett Hingle, judge as aforesaid, did not pass upon said motion and objection. That the defendant, Edward Peter, then through his counsel moved the- court to continue said hearing of said writ to some future day, to enable said Peter to procure the attendance of a witness whose name he alleged was unknown to him, but who, he thought, he could find in the city of New Orleans, to which city he (said witness) was expected to return at some future day, by whom he would prove that petitioner was an *359 unfit person to have the control of his said daughter. That thereupon the said Hon. R. Emmett Hingle, judge as aforesaid, declared that he could not hear and decide said application for the writ of habeas corpus, and said writ, for the reason that the clerk of his court was not present, and he had no one to keep and record the minutes of his court, and then, over the protest and objection of petitioner, made through his counsel, ordered the hearing to be further continued until the 20th day of July, 1909, at the said stock landing, at the hour of 10 o’clock. That he, with his counsel and witnesses, repaired to the said stock landing, to the building in which the said judge usually held the sessions of his said court at that place, at the hour of half past 9 o’clock in the morning of said 20th day of July, 1909, and that said Edward Peter also attended there with the said child and a witness. That petitioner remained at said place until half past 12 o’clock p. m. of said date, awaiting the arrival of said judge; but that said judge did not attend said place of trial as fixed by him. That petitioner made and caused to be made diligent search in and about the said stock landing, at all the public places thereof, for the said judge; but that he could not be found, and that thereupon petitioner, with his counsel and witnesses, left said place and returned to New Orleans, and the said Edward Peter took petitioner’s child off with him. That the above acts amount to a denial of justice to him, and are a disregard of the writ of habeas corpus and a nullification of this most sacred, solemn, and peremptory writ known in the jurisprudence of Louisiana, and of all other Anglo-Saxon states and countries, is a virtual suspension of the said writ in the parish of St. Bernard, and that he verily believes, and so charges, that he will not be able to have said writ tried and his said daughter restored to him unless by the intervention of this honorable court. That he has given due notice of this application to the said ITon. R. Emmett Hingle, judge aforesaid, and to the counsel of the said Edward Peter, as the law and the rules of this honorable court require, by filing with the clerk of said Twenty-Ninth judicial district court, at his office at St. Bernard, in the parish of St. Bernard, notices addressed to said judge and said counsel to the said effect.
“In view of the foregoing facts, and from the fact that is clearly deducible therefrom that he cannot procure a hearing and trial on said writ of habeas corpus in the court of the parish of St. Bernard in the speedy and summary manner in which the laws and Constitution of the state of Louisiana guarantee to him, that there issue out of this court a writ of habeas corpus to the said Edward Peter, directing and commanding him to produce before this court, or some justice thereof, at a time and place to be fixed in said order, the body of the said Prances Elizabeth Ryan, together with the cause and reason of her detention; that after due hearing said writ of habeas corpus be made absolute; and that said Edward Peter be ordered and commanded to release the said Prances Elizabeth Ryan from his custody and control, and to surrender her to petitioner, her father. In the alternative, and in the event that the foregoing prayer be refused and denied, petitioner prays that there issue from this court a writ of certiorari and mandamus to the said Hon. R. Emmett Hingle, judge of the Twenty-Ninth judicial district of Louisiana, sitting in and for the parish of St. Bernard, directing and commanding him to send up to this court for inspection and review the proceedings in said court,_ entitled ‘In re John P. Ryan, Praying for a Writ of Habeas Corpus,’'referred to above, with the record therein, and copies of all the orders entered therein by the said court, or the said judge in chambers, and all matters and things pertaining thereto, and that the said Hon. R. Emmett Hingle, judge aforesaid, be ordered to show cause why he should not be directed to try and determine this cause.”
This petition is sworn to by the petitioner.
On reading this petition the Chief Justice of this court ordered and directed Hon. R. Emmett Hingle to show cause why the application of John P. Ryan, relator, for a writ of habeas corpus, should not be tried and determined by him.
R. Emmett Hingle, judge of the Twenty-Ninth judicial district court for the parish of St. Bernard, upon his judicial oath, for answer to the demand of relator for writs of mandamus and certiorari, averred that the application of relator for a writ of habeas corpus reached respondent by mail on June 17th, accompanied by a letter from relator’s attorney requesting that the matter be heard at respondent’s convenience during the week within which petition was filed; that relator’s attorney made the further request or suggestion that the matter be heard at the stock landing, which is at the extreme upper end of St. Bernard parish, about 12 miles from the courthouse, where the clerk of court resides, and, in the event that respondent was unable to try said cause during said week, that the matter be fixed for hearing at some later date, at respondent’s discretion, since he (relator’s attorney) had to go to Houma, La., in the interest of the Oyster Commission of Louisiana, all of which led *361 respondent to believe that this matter was not of the urgent nature now presented by relator. Respondent avers that it was impossible for him to try the said cause during the week beginning June 17th, both because he was then engaged in the work of a special jury term in Plaquemines parish, and because there would not have been sufficient time (allowing for transmission of petition, etc., through the mails), in respondent’s opinion, for service upon defendant. He, therefore, did not sign the order until the completion of his work in the parish of Plaque-mines, and until he could see the relator’s attorney, for the purpose of his insuring the attendance of the clerk of court at the stock landing, by paying the said clerk’s expenses —a rule at times customary in the said parish of St. Bernard, on the trial of causes in which the parties and witnesses are residents of the upper end of the parish, or of the city of New Orleans; the court in such cases leaving the matter of the attendance of the clerk to the attorney or attorneys interested, and not assuming any responsibility for his attendance or nonattendance. Respondent avers that after finally reaching relator’s attorney, though having endeavored’ several times to phone him at his office, from respondent’s house at Pointe a la Piache, La., he signed the order for the return for 11 o’clock a. m. July 3, 1909, at stock landing, parish of St. Bernard. Respondent avers that he went up to the stock landing on said July 3, 1909, to consider said cause, but was informed upon his arrival that no service of plaintiff’s petition had been made upon defendant, Edward Peter, because of the fact that no deposit to cover the sheriff’s costs, as required by law, had been made by relator until the morning of July 3, 1909, and that a deputy sheriff had been sent to make the service, but had not returned at the hour fixed for the consideration of the cause. Respondent specially denied that Edward Peter, the defendant, who lives three miles below the stock landing, or the child in controversy, was present in court up to the time of respondent’s departure, about 12:30 p. m. Respondent further alleged that he did then cause an order in open court to be entered on the minutes, fixing the matter for Saturday, July 10, 1909, to which both relator and his attorney yielded seeming assent, since no request was made for a speedier hearing, though respondent could not have fixed the matter for an earlier date, since the week following July 3, 1909, was the week designated by the rules of his court for the session thereof in the parish of Plaquemines. Respondent further avers that he returned to stock landing on July 10, 1909, and was informed that the clerk of court was absent because of illness. Whereupon defendant, Edward Peter, through his attorney, objected to any consideration of the cause without a clerk, who was a necessary officer at the sitting of the court, and on the further ground of absence of a material witness for the state. Respondent considered the former objection well taken, and upon expressing his intention to write out an order fixing the cause for July 20th, at the courthouse, relator’s attorney arose, and not altogether respectfully exclaimed:
“I withdraw my application for a writ of ha beas corpus in this matter and will go to the Supreme Court.”
Respondent avers that he intended fixing the cause for the 20th of July, at the courthouse, because it was the next regular day of his term in said parish of St. Bernard, but that he did not appear at said courthouse on said date because relator’s counsel was taken seriously by respondent, when he, relator’s attorney, said he withdrew his application, and that your respondent had not, therefore, written any order or otherwise legally fixed the trial of said cause. Respondent further *363 ■alleges that he stands ready to perform his duty in this matter, having, in his opinion, shown an inclination so to do by actual at- • tendance at court on two different occasions, and that the application of relator is, therefore, without reason or foundation, and should be hence dismissed, at his costs.. Respondent annexes a duly certified copy of this suit in obedience to the writ of certiorari, as well as the affidavit of the lion. N. H. Nunez, district attorney for the Twenty-Ninth judicial district.
The affidavit of N. H. Nunez, referred to, is to the effect that he was present at the stock landing in the parish of St. Bernard on July 3d and July 10th, when the case of John P. Ryan, praying for a writ of habeas corpus, was called, and the case went over from the 3d to the 10th of July, 1909, for the reason that no return of service had at that time been made, the deposit, as required by law, having been made on July 3d, on which day the service was made; that on the 10th of July,'1909, the judge ruled that he could not try the case, the clerk not being present, and continued the case to the 20th of July, 1909, when Mr. Wickliffe, representing the plaintiff, informed the judge that he withdrew the case and would apply to the Supreme Court; that the exact words of Mr. Wickliffe at the time, to the best of his recollection, were as follows:
“No; no; no. I withdraw my application. I will go to the Supreme Court.”
The relator, John P. Ryan, alleging that he had obtained leave of the court so to do, filed a traverse of the return of the judge of the district court. I-Ie specially denied that either he or his attorney ever, formally or informally, or in any manner, withdrew or offered to withdraw his application for the writ of habeas corpus made by him to the Hon. R. Emmett I-Iingle, judge of the Twenty-Ninth judicial district of the state of- .Louisiana. He shows that on the 10th day of July, 1909, after the said oudge had, without cause or reason, in the opinion of relator’s counsel, continued the hearing of said writ for more than 10 days, and after the said judge had adjourned whatever of a session of his court he had been holding, as relator’s counsel was leaving the room, where the said judge had been sitting, he, relator’s counsel, said to the said judge, who was following immediately behind said counsel:
“If we cannot get this writ tried, we might as well withdraw the application; but we will go to the Supreme Court, and see if we cannot get a hearing.”
But no withdrawal of said application for a writ was made by his counsel with any authority from relator.
He specifically traversed the allegation in the response of the said judge to the effect that the defendant in said writ, Edward Peter, was not at the stock landing, the place where said writ was made returnable, with his said child, on July 3, 1909, the day where saifi writ was first made returnable. Relator alleges that he knows both his own child and the said Peter, who was a brother of relator’s deceased wife, and that he saw them both within a hundred feet of the room where the said judge was holding whatever of a session of his said court that he held that day, and before said judge left said stock landing, and that on that occasion he attempted to speak to his said child, and was prevented from so doing by those who had her in charge.
Relator specially traverses that portion of the said response wherein the said judge alleges that he continued the trial of said writ on Saturday, July 17, 1909; but he alleges and charges that at first said judge did fix said date at' the time to which he would continue said trial, and then changed it to Tuesday, July 20, 1909. And relator further showed that said fact was so well known to all parties that on said Tuesday, July 20, *365 1909, not only relator and his counsel and witnesses, but tbe respondent, together with relator’s child and respondent’s counsel and alleged witness, were all at the said stock landing on said last-named date to go on with the hearing of said writ. Relator hereto attached his affidavit and that of his counsel in this traverse, and asks that same be made and considered a part hereof. The affidavit referred to of relator’s counsel was to the effect that all the allegations of the traverse are true and correct, that he never withdrew or attempted to withdraw the application filed by said Ryan for a writ of habeas corpus for his child; that after the said Hon. R. Emmett Hingle, judge as aforesaid, had refused to hear the application for a writ of habeas corpus and try and determine the same on July 10, 1909, and had closed whatever session of his court he may have been holding, at a time' when affiant was leaving the room where the said judge had been sitting, followed by said judge, both wearing their hats and walking towards the door of the room, affiant, in a temper at the manner in which the case was being treated, said to the said judge:
•“If we cannot get the writ of habeas corpus tried, we might as well abandon (or withdraw— which word affiant used he cannot now say) the application; but we will apply to. the Supreme Court, and see if we cannot get redress in this matter”
—meaning thereby that he would invoke the supervisory power of the Supreme Court to procure a hearing of this matter. Affiant further declares that after hearing arguments from counsel in a cause, whose title he does not remember, the said judge announced that, as the clerk of' his court was not present; he could hold no session of his court and hear the writ of habeas corpus, alleging that there was no one to keep the minutes or take down the testimony; that he had simply heard the arguments of the counsel who had just closed in chambers as a courtesy to them. Affiant further declares that the said Hon. R. Emmett Hingle is learned in the law, and knows that the Twenty-Ninth judicial district court is a court of record, and that all proceedings had and taken in matters of litigation therein must be done and had in writing; that said judge had not declared that he had not held any session of his said court, and could not hold one on account of the absence of the clerk thereof, and, therefore, no motion, either written or verbal, even if a verbal motion could suffice in a court of record, could be filed to dismiss said proceeding. Affiant further declared that the application for said writ was never withdrawn, either by himself or his client, or by any one for him.
A copy of the proceedings sent up shows that the relator in the latter part of June, 1909, petitioned the judge of the Twenty-Ninth judicial district court to issue a writ of habeas corpus directing and commanding Edward Peter to produce the body of relator’s daughter, Frances Elizabeth Ryan, at such time and place as the court might fix and select, together with the cause and reason for her detention, to tbe end that the holding and detention of said child might be inquired into, and praying that upon the hearing of the writ he have judgment against Edward Peter, ordering and commanding him .to release said child and surrender her to petitioner ; that upon reading said application said judge ordered a writ of habeas corpus to issue, commanding said Edward Peter to' produce the body of said child at the stock landing at 11 o’clock. July 3; 1909, together with the cause of her detention by him. A, writ issued and was served on the defendant-at 12 o’clock July-3, 1909. -Oopy of the .minutes show that on that .day the writ came on. for trial; J. C. Wickliffe, attorney for plain-, tiff, and F.- J. Nunez and Fred Ahrens, attorneys for defendant. i After hearing, counsel for plaintiff and defendant, it was ordered by! *367 the court the hearing of the writ be continued to Thursday, July 10, 1909, at 10 o'clock a. m. The record shows nothing on July 8th or July 10th of any action taken on the call, other than on July 8th the defendant in the writ filed an answer in the case. Nothing appears to have been done with reference to this answer.
On the 8th of July, 1909, the defendant answered the writ of habeas corpus served upon him, declaring that he produced before the court the child named in the writ. He denied that the said child was illegally detained by him, and averred that he was by law entitled to the care and custody of said child for the following reasons, to wit: That, although relator is the father of the child, he was not the proper party to have possession of the said child, for this, to wit: That relator had been and was now living as man and wife with a certain person by the name of-, who was not his lawful, wedded wife, and that the said woman was herself a married woman, not divorced from her said husband, but whose said husband was then seeking a divorce; that the relator lived with this said woman prior to his marriage with his late deceased wife, the mother of the child now at issue; that of this unlawful living together of this man, the relator herein, and of this woman, there was born a child; that the relator herein had often tried to make this lawful child, produced here, recognize as her brother this illegitimate child of this unlawful living together of these said persons; that, if the possession of this child was given to -the relator, he would take her to his home, at which home there lives this woman as his wife, although not married to him and having a living husband, who is not separated from her; that she will be compelled to recognize as her brother this illegitimate boy; that the house of the relator was not the proper place to take a young girl 14 years old; that for seven months relator failed to recognize the child at issue as his child; that during this time he ignored her and failed to support her; that he never inquired as to her health or welfare — in fact, he had abandoned her; that this unnatural father only began to support his said child when he was compelled by an order of court from the parish of Orleans, and only after he had been forced to serve 3 weeks in the parish jail in the city of New Orleans; that, considering all the facts herein given, he (respondent) did not think that the place relator desired to take this girl to was the proper place to raise the said girl. Respondent shows that he was the uncle of the said girl; that he maintained her at his home with the rest of his family, and that he desired to continue to retain her and raise her up; that the surroundings where she now lived are the best that she could obtain anywhere; that she was now with him by her own free will and consent; and that it was best for the said child physically, as well as for her moral welfare, that she should remain with respondent.
Opinion.
The first prayer of relator for relief under his allegations and in his argument is that this court, or some justice thereof, issue a writ of habeas corpus, directed to Edward Peter, commanding him to produce before it the body of Francis Elizabeth Ryan, and to assign the reason of her detention, and that after due hearing the writ of habeas corpus be made absolute, and said Edward Peter be ordered and commanded to release her from his custody and control, and to surrender her to relator, her father.
If it were conceded that the judge of the Twenty-Ninth judicial district court, after-having been applied to, to issue a writ of habeas corpus directed to the respondent Peter, had done so, and had subsequently, by reason of improper and illegal means, failed to bring the issues raised in the writ to trial,. *369 as alleged by the relator, that condition of things would not have warranted or justified this court in granting the relief so herein prayed for, and in assuming original jurisdiction in this matter and issuing its own writ of habeas corpus in the premises, ignoring and passing by, without comment, the culpable action of the district judge.
A proper administration of justice would require that the district judge be compelled, by mandamus, to perform his duties. This seems to have been the view taken, and properly taken, by the Chief Justice, in his order upon the present application.
The only issue before us on this rule is whether the judge of the Twenty-Ninth judicial district court should be commanded by mandamus to try and determine a writ of habeas corpus which was issued by the Twenty-Ninth judicial district court in and for the parish of St. Bernard, on the application of John P. Ryan, in the matter entitled “In re John P. Ryan, Praying for a Writ of Habeas Corpus for Prances Elizabeth Ryan,” No. 748 on the docket of said court.
I have examined the proceedings in the matter referred to. It contains nothing that leads me to suppose that the delay which has arisen in this case should be attributed to a desire or intention on the part of the district judge to purposely procrastinate and delay the trial of the writ of habeas corpus which he had caused to be issued, so as to thwart the relator in his endeavor to have the child surrendered to him.
The writ of habeas corpus is summary in character, calling in most cases for prompt action; but, however summary in character a remedy is designed to be, it is not expected that that fact should do away with all drawbacks standing in the way of immediate action in legal proceedings. It is true the law requires justice to be administered without delay, but that means without unreasonable and unnecessary delay. We have heretofore had occasion to refer to this matter. See State ex rel. Baumann v. Sheriff, 44 La. Ann. 1014, 11 South. 541.
There have been delays in this case, but none which, in my opinion, have worked in the past “a denial of justice” as charged, and none giving rise to a presumption that the-district judge proposed to deal in the future, with respect to the relief demanded through him, otherwise than fairly, impartially, and with such promptness as he could, in view of the business of his court and the claims of other parties. I do not find that the district judge has “refused to perform” any judicial duty demanded of him. If the writ of habeas corpus does not stand presently fixed for trial, fixed for a day certain, it has been because of the belief on the part of the judge that relator had stated that he withdrew the application made to him for the writ and would have recourse to the Supreme Court for relief. Had the district judge not so believed, we have reason to think he would have continued the writ for trial at the courthouse in the parish of St. Bernard at a future day, which he proposed to designate. He announces his entire willingness to do so now. A suspension of the proceedings in this case has resulted from misapprehension. This should be corrected, and the proceedings taken up where the interruption took place, and carried forward to completion.
Eor the reasons assigned, R. Emmett Hingle, judge of the Twenty-Ninth judicial court, is hereby directed and ordered to take up the proceedings entitled “In re John P. Ryan, Praying for a Writ of Habeas Corpus for Prances Elizabeth Ryan,” No. 748 on the docket of the Twenty-Ninth judicial district court of the parish of St. Bernard, at the point where the proceedings therein were suspended, and to carry them forward to final decision by himself; and to that end he is hereby ordered to issue all orders necessary *371 in the' premises and have all legal notices and process served upon the parties in interest.
' It is further ordered that the hearing of said writ of habeas corpus take place at the courthouse of St. Bernard.