(52 South. 573.)

No. 17,956.

Ex parte RYAN.

(Feb. 28, 1910. On the Merits, May 9, 1910. Rehearing Denied June 6, 1910.)

*(Syllabus by the Court.)*

On Motion to Dismiss.

1. APPEAL AND ERROR (§ 801*)—DISMISSAL—MATTERS NOT APPARENT OF RECORD.

Appellee moves to dismiss the appeal basing his motion upon alleged proceedings taken in the district court after appellant has executed an appeal bond of which proceedings there has been no evidence produced in the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3161; Dec. Dig. § 801.*]

2. HABEAS CORPUS (§ 85*)—CUSTODY OF CHILD—DISMISSAL OF WRIT.

Relator, as father, seeks through a writ of habeas corpus directed against the brother of his deceased wife to obtain the care and custody of his daughter, about 13 years of age, living with her uncle. The district court refused relator's application to have the child surrendered to him, and he has appealed. Under the facts disclosed by the evidence the judgment is affirmed.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 78; Dec. Dig. § 85.*]

3. HABEAS CORPUS (§ 99*) — CUSTODY OF CHILD—BEST INTERESTS OF CHILD.

A writ of habeas corpus issued by a court on the petition of the father of a girl 13 years of age, directed against the brother of relator's deceased wife, to compel defendant (with whom the child was living) to surrender possession of her to him, can scarcely be regarded in the light of an ordinary suit between relator and his brother-in-law. It is a matter in which the state has an interest beyond the mere right and authority of the father. The welfare and happiness of the child are involved and have to be considered by the court.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99;* Parent and Child, Cent. Dig. §§ 4–32.]

4. HABEAS CORPUS (§ 34*)—CUSTODY OF CHILD.

When called into court by a writ of habeas corpus issued on the petition of the father of the child to show cause why he should not surrender to him possession of his child, defendant has the right by way of defense to urge before the court any good reason why relator's prayer should not be granted and relief be refused.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 7; Dec. Dig. § 34.*]

5. HABEAS CORPUS (§ 99*)—CUSTODY OF MINOR—DETERMINATION.

Relator having invoked in his behalf the exercise of the court's authority in the premises,

it has the legal right from a consideration of all the issues raised to determine on the trial of the writ whether a proper case has been shown calling for its interposition.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99.*]

Appeal from Twenty-Ninth Judical District Court, Parish of St. Bernard; R. Emmett Hingle, Judge.

Application of John F. Ryan for writ of habeas corpus. Application denied, and relator appeals. Affirmed.

See, also, 124 La. 286, 50 South. 161.

John C. Wickliffe, for appellant. Fernand J. Nunez, for appellee.

On Motion to Dismiss.

NICHOLLS, J. This case comes a second time before this court. The pleadings and facts connected with it will be found reported in 124 La. 356, 50 South. 385.

The trial of the writ of habeas corpus which was suspended for a time through a misapprehension was finally taken up, and resulted in a judgment adverse to the relator, and from that judgment he appealed.

Appellant executed an appeal bond, and we are informed that, by proceedings subsequently taken in the district court, the appeal was, on motion of the respondent, dismissed on the ground of the insufficiency of the surety on the appeal bond.

The transcript of appeal had been none the less filed in this court, but the appellee, taking as his basis therefor the proceedings in the district court, moved this court to dismiss the appeal. Before the case was submitted to us, counsel for appellant filed an ex parte copy of an order of the lower court setting aside its prior order dismissing the appeal, and reinstating for subsequent action the motion to dismiss.

The proceedings in the district court in respect to the dismissal of the appeal are not in this record. The motion to dismiss is hereby overruled. The appeal is sustained.

## Statement of the Case.

NICHOLLS, J. This case comes a second time before this court. The pleadings and facts connected with it will be found reported in 124 La. 356, 50 South. 385.

The trial of the writ of habeas corpus, which was suspended for a time through a misapprehension, was finally taken up, and resulted in a judgment adverse to the relator, and from that judgment he appealed.

The relator does not bring this action as tutor of the child, Frances Elizabeth Ryan, but under his asserted legal rights as her father. The defendant, Edward Peter, is the brother of relator's deceased wife. He claims to be entitled to the care and custody of the little girl by reason of the fact that, when her father and mother disagreed and parted, the mother and the child went at once to his home, and after a visit to her mother in Carrollton on which visit she (the mother) died the child was again taken to respondent's house, where she has since continued to live. Respondent urges that as her near relative it is his duty to guard against her being brought under influences calculated to injure her, and to see to her welfare and happiness.

It is disclosed by the testimony that the father shortly before his marriage with defendant's sister had had illicit relations with a young girl, and that a child (a boy) was the result of such connection. The young girl herself married a short while after a man by the name of F.

The district judge in rejecting the demand of the father to be awarded the care and custody of his daughter referred to this matter in the following language:

"The relationship with Mrs. F. before the latter's marriage should have ceased when he himself married. He should have put that affair behind him. However, a careful consideration of the entire testimony on this point cannot but lead to the conclusion that his relatives had not only come in contact with her, but also he had stooped so low as to bring his child Frances Elizabeth (just reaching the age of womanhood) into the company of this woman and his ill-begotten child by her. Relator makes no denial of this, but on the contrary brings this Mrs. F. into court into constant company of members of his family to testify in his behalf in this suit, and it appears from the record that she had not been previously summoned to testify as a witness herein. This latter fact alone should lead to the immediate inference that the relations presently existing between relator and Mrs. F. can result in aught but good, should the child be given into his custody. For a child to be forced into the company of a woman who has been the cause of so much misery to the departed mother of the child foreshadows for her little of the good and happiness coveted by all. Believing firmly in the preservation of those ties binding a father to his child, it is indeed with reluctance that I have arrived at the conclusion that the relator herein should not be awarded the custody of the child; and I have been largely influenced in this connection by the presence in court of Mrs. F. Her being in the constant company of relator's family (his mother, sister, and brother) in the train to and from the courthouse—her demeanor therein as a witness—all are facts whereof I am bound to take judicial cognizance in the consideration of this case, wherein are involved questions which are more than sacred—the character and future of the child just budding into womanhood."

## Opinion.

The testimony in the record does not justify the conclusion of the trial judge as to the continuance of relator's relations with Mrs. F. since his marriage. Both she and the relator testified that they had ceased after his marriage, and there is nothing in the transcript to establish the contrary. There was no attempt to impeachment further than the fact mentioned by the judge that she was a voluntary witness on the trial of the writ, and went from New Orleans to St. Bernard in the same car with the mother, brother, and sister of the relator. There is nothing to show that if the care of the child be given to the father that she will be brought into contact with the woman. She does not appear to visit at his mother's house at which he lives or to have anything to do with the family.

As was likely to be the case, these prior relations of her husband with Mrs. F. and the existence of this illegitimate child were

made known to the wife, and became the occasion of constant trouble and dissension between the spouses. Their married life was unhappy. They separated several times, and finally the husband left the matrimonial domicile, and went to his mother's house, leaving his wife and child at home; assigning as a reason for so doing that he was sick and did not receive proper attention and treatment at home. The wife and child thereupon went to live with her brother claiming his sympathy and support. Relator does not seem to have objected to their doing so. In his testimony, he says:

"I met my landlord, and he told me that my wife was going to sell everything out, and I went home and found my wife there, and asked her about it, and she told me 'Yes'; and she said she was going to her brother Ed. I was a very sick man, and I said, 'Kate, if you think it is better, all right; and if you want anything let me know.'"

It appears from the record that she did let him know that she needed assistance for herself and child and that he failed to respond; that she thereupon made an affidavit against him under the statute charging him with "having willfully and unlawfully deserted his minor child, Frances Ryan, aged thirteen years, and failed to support and provide for said minor child, having left her in destitute circumstances"; that relator was found guilty by the juvenile court of the offense charged, and sentenced to pay $5 weekly to the criminal sheriff; that having failed to do so a rule was taken against him under which he was sentenced to three months' imprisonment in the parish jail.

Relator subsequently brought a suit for separation from bed and board, and asking for the custody of the child, but, before that case was brought to trial, the wife died. The little girl was placed upon the stand, and testified that she did not want to go to her father. Referring to conditions existing at the time that she and her mother left to go to her mother's brother, in respect to which relator testified that he left the house for want of proper treatment, she said that a doctor had been sent to attend him; that her mother did not speak to him, so she had to wait on him; that her father would not let her mother come to him; that she would speak to him, but he would not speak to her— she speaking to him, but he would not let her come near him.

We are satisfied that out of the troubles and dissensions between the parents the child has grown up to have no affection towards her father; that she has reached an age when to be forced to live with him and his family and to separate from those to whom she has become attached would be productive of future unhappiness to her, resulting in anything but good.

It is not pretended that the relations presently in charge of her are not perfectly able and willing to support and take all proper care of her, or that there is anything in the present situation which calls for a change. There are no property rights involved in this case. There is one circumstance shown by the testimony which we have not noticed, which under existing conditions unquestionably tended to widen the breach between the parents, which was that relator declared to one of the witnesses that he intended to take care of and support the illegitimate child, and that he did not care what the consequences would be. Relator questions the power and authority of the trial judge to examine into and pass upon his fitness to take charge of the child. He urges that his own domicile is in the parish of Orleans as is legally that of the child, and that the civil district court is the only court to which such matters should be submitted. There is no question before the court touching the matter of tutorship and the rights and obligations of parties arising therefrom. Relator has not sought to be nor has he been appointed tutor.

The child, as a matter of fact, has been and is in the care and custody of respondent in the parish of St. Bernard. Such being the case, relator has himself properly invoked the power and authority of the judge for that parish by way of habeas corpus, and respondent has answered the writ showing cause. By so doing he has raised issues which it became necessary for the judge to incidentally determine. Cases are constantly occurring before courts wherein questions are passed upon incidentally for the purpose of deciding a particular case before them when the same issues would, if made the subject-matter of a direct action between the parties, be properly referred to some other tribunal. These proceedings by habeas corpus can scarcely be regarded as a suit between the relator and the defendant.

It is a matter (as was said in Lasserre v. Michel, 105 La. 741, 30 South. 122, 54 L. R. A. 927) in which the state has an interest which goes beyond the mere right and authority of the father. The welfare and happiness of the child have to be considered by the court.

In view of all the facts and circumstances of this case, we find no error in the judgment appealed from. It is therefore affirmed, with costs.

PROVOSTY, J., takes no part, not having heard the argument.