ROGERS, Justice.
The relator, Roy Conerly, is the father and the respondent, Mary Sonier, is the maternal grandmother of Wardell Conerly, a boy about five years old. Relator brought this proceeding by habeas corpus to obtain possession of the child who is in the custody of his grandmother. After hearing the testimony, the trial judge dismissed the proceeding and awarded the custody and care of the child- to the respondent, and relator has appealed.
Roy Conerly and Grace Sonier were married on April 13, 1937. Wardell Conerly, the child involved in this proceeding, is the issue of the marriage. The relator and his wife lived together about three years, or until April, 1940, when they separated, relator’s wife returning to the home of respondent, her mother, taking her baby with her. In March, 1943, relator’s wife, alleging that he had committed adultery with a woman named Lucy Seal, obtained a judgment of divorce and a decree awarding to her the custody of her child. Subsequent to the judgment of divorce, relator’s former wife married a soldier whom she thereafter visited at several camps in Virginia and Kentucky. On one of those visits she took her child with her. When her husband departed for overseas duty, she and her child returned to her mother’s home in Leesville where, after several weeks illness, she died on December 13, 1943.
About a month after the death of the child’s mother, relator, accompanied by his employer, went to the home of respondent and took the child away, but later, on the advice of his employer and a police officer, he returned the child to the home of respondent and thereafter brought this habeas corpus proceeding.
The trial judge did not assign any written reasons for his judgment, but his comments during the course of the trial show, and the judgment itself indicates, that he thought the happiness and welfare of the child required that he should remain where he presently is, in the custody of his grandmother.
There is no dispute about the law of the case. Ordinarily, parents have the natural and legal right to the custody and care of their minor children. But their right in this respect is not unauestionable or absolute. State v. Lefort, 179 La. 919, 155 So. 435. In that case the Court referred to, with approval, the holding in State v. Michel, 105 La. 741, 746, 30 So. 122, 124, 54 L.R.A. 927, that “while the father may have the first title to custody of the children by nature, his claim may be disregarded by the court, acting on a principle of natural justice,” and also the holding relative to the right of the father in Ex parte Ryan, 126 La. 449, 52 So. 573, that “it is a matter in which the state has an interest beyond the mere right and authority of the father. The welfare and happiness of the child are involved and have to be considered by the court.” This principle of our law, supported by numerous citations, is set forth in the opinion of this Court, on rehearing, in State ex rel. Landry v. Robin, 193 La. 789, 192 So. 349, 353, as follows: “The right to the care and custody of a minor child whose mother or father is dead is granted by law to the surviving parent unless it is proved that he or she is disqualified by unfitness or inability to care for the child.”
The testimony adduced on the trial of the case amply supports the judgment appealed from. It clearly shows that relator is not a fit person to be entrusted with the care of his child. He lived in adultery with a woman named Lucy Seal prior to the birth of the child and continued to do so up to the time of the trial of the case. The testimony also shows that relator was *292 cruel to his wife, the mother of the child, striking her on numerous occasions with his fist and other objects. On one occasion, just prior to the birth of the child, relator struck her over the head with a coca-cola bottle and threatened to kill her. Another time he “almost choked her tongue out,” with the result that she had to be taken to a hospital by respondent who paid her hospital and medical bills.
The testimony further shows that relator is addicted to gambling, is a heavy drinker and is often seen drunk on the streets of the town. If he had any affection for his child, he has never shown it. After he and his wife separated, she was driven to the necessity of returning to her mother’s home for shelter and support. During the entire period of the separation and divorce and up to the trial of the case, relator contributed practically nothing towards the support of his child. In fact, on one occasion he told Officer West of the Leesville Police Department, assigned to the negro section of the town, that Wardell was not his child and he did not feel that it was his place to support him.
Relator is not a steady worker. In fact, it was only during the two months preceding the trial of the case in the district court that he was engaged in steady work, • — in the morning working at a restaurant, and in the afternoon and nights working in a saloon.
Relator has no home of his own, but lives at the home of his father and mother where of necessity he must place the child if he were successful in this proceeding. Relator’s father and mother testified that they would take care of the child, but the evidence shows that relator’s mother is not in good health and that his father is not physically able to perform hard labor.
It is shown that relator was classified 1A by the Selective Service Board and was scheduled for induction with the first group of negro troops who went from Vernon Parish after the suit was filed and that he was actually inducted into the service before the judgment was rendered.
It is strongly suggested it was only after relator had been informed that the stepfather of the child had made an allotment of $30 per month for his support and had made his war risk insurance of $10,000 payable to the child upon his death that relator suddenly changed his attitude towards his child and instituted this proceeding to obtain his care an'd custody.
On the other hand, the testimony discloses that the respondent, Mary Sonier, is a woman of good moral character. She is fifty-three years of age, is in good health and has reared five children of her own. One of her children, Cleo Sonier, lives with her. The child, Wardell Conerly, was born in the home of Mary Sonier, his grandmother. Both she and the child’s aunt, Cleo Sonier, have been taking good care of the child for the past five years and are anxious to continue to do so. The child has not lived with his father since his father took him and his mother back to the grandmother’s home and told the grandmother that he was through with them and she could have them.
Our examination of the record convinces us that the welfare of the child requires that he be left in the care of his grandmother, the respondent, where he has been placed by the judge of the district court.
For the reasons assigned, the judgment appealed from is affirmed.