(96 South. 672)

No. 25789.

STATE v. KERN.

In re KERN.

(Feb. 26, 1923.  Rehearing Denied April 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. Criminal law ⬤⟿624—Insanity at time of homicide is to be determined by jury.

Insanity of one accused of murder at time of the homicide is a fact to be determined exclusively by the jury on the trial of the case.

2. Insane persons ⬤⟿19—Public hearing in open court contemplated.

Act No. 68 of 1918, relative to proceedings against alleged insane persons, is mandatory and contemplates a public hearing in open court.

3. Insane persons ⬤⟿19—Statute authorizing proceedings in chambers held repealed.

Act No. 68 of 1918, relative to proceedings against insane persons, section 7 of which repeals conflicting laws, and especially Act No. 253 of 1910, covers the whole subject-matter and repeals Rev. St. § 1768, permitting proceedings in chambers.

4. Insane persons ⬤⟿13—Warrant held essential part of proceedings.

Under Act No. 68 of 1918, relative to proceedings against insane persons, issuance of warrant ordering the alleged insane person brought into court is a highly essential part of the process of law thereby prescribed.

5. Insane persons ⬤⟿20—Witnesses on hearing must be sworn.

Act No. 68 of 1918, relative to proceedings against alleged insane persons, contemplates a judicial proceeding, and, as it does not expressly exempt witnesses from being sworn, they must be sworn.

6. Insane persons ⬤⟿19—Proceedings held null when statute not complied with.

When, in proceeding against alleged insane person, no warrant was issued, she was not brought into court for public examination and hearing, and some of the witnesses were not sworn, the proceedings were null under Act No. 68 of 1918.

7. Insane persons ⬤⟿27—Prohibition ⬤⟿18—Proceeding not premature because judgment and commitment against insane person not signed.

Proceeding by certiorari and prohibition by one adjudged insane to test legality and validity of the proceedings is not premature because judge has not signed the judgment and commitment warrant.

8. Certiorari ⬤⟿1—Reviews regularity of proceedings where no appeal lies.

The writ of certiorari arraigns the regularity of proceedings of an inferior court where no appeal lies, by means of which proceedings absolutely void may be set aside.

Certiorari from Twenty-Eighth Judicial District Court, Parish of Jefferson.

Mrs. Julia Kern was adjudged insane, and she applies for writs of certiorari and prohibition.  Proceedings set aside, and writ of prohibition issued.

Carroll & Carroll, of New Orleans, L. Robert Rivarde, of Hahnville, and Henry G. McCall and A. J. Plough, both of New Orleans, for applicant.

A. V. Coco, Atty. Gen., and C. A. Buchler, Dist. Atty., of Gretna (T. S. Walmsley, of New Orleans, of counsel), for the State.

LAND, J. On June 28, 1922, an affidavit was made against relatrix by a deputy sheriff of the parish of Jefferson, charging her with the murder of Charles Mann. She was arrested and placed in jail. No warrant was issued for her arrest, as far as the record in this case discloses.

On July 7, 1922, the district attorney of the Twenty-Eighth judicial district filed a complaint under oath, designated as a petition, charging that relatrix, then incarcerated in jail on a charge of murder, was "violently insane," and that it was necessary that she be confined in an institution established by the state for the treatment of the insane.

Respondent judge appointed a commission de lunatico inquirendo, composed of the coroner of Jefferson parish and of Dr. A. J. K. Genella, to examine into the mental condition of relatrix.

The minutes of the court of date August 4, 1922, state that—

"The said commission presided over by the judge of this court held two sittings, one in the early part of the month of July, and the other in the latter part of July, and, after having interrogated Mrs. Kern, adjourned to this day for deliberation, and, after deliberation, the doctors disagreed upon the subject of insanity, Dr. A. J. K. Genella being of the opinion that Mrs. Kern is absolutely sane, and Dr. Chas. F. Gelbke, coroner, was of the opinion that she was insane, being a border line case. The judge presiding agreed with the coroner. Thereupon Dr. A. J. K. Genella positively refused to be a party to the coroner's certificate, or in any manner be a party thereto, expressing the belief that he would be doing a wrong. Thereupon the judge ordered the commission dissolved and their investigation to be without effect."

The district attorney then presented a petition to the court, annexing thereto the minutes of August 4, 1922, and prayed that the commission be dissolved, and that a new commission be appointed by the court.

A second commission, composed of the coroner of said parish and of Dr. C. V. Unsworth, was appointed August 4, 1922, and on January 8, 1923, presented to respondent judge a report to the effect that relatrix, at the time of the homicide, and at the date of the report was suffering "from a delusional form of insanity," with the recommendation "that she be placed in some institution for care and treatment until she is pronounced cured."

[1] The insanity of an accused person at the time of the homicide is a fact to be determined exclusively by the jury on the trial of the case. Relatrix has not yet been indicted for the murder of Charles Mann.

We have reviewed these matters for the purpose of showing the atmosphere surrounding this case.

On January 9, 1923, respondent judge, the coroner, and Dr. C. V. Unsworth signed the formal "Certificate of Physicians," declaring relatrix insane.

On January 16, 1923, relatrix filed her present application for writs of certiorari and prohibition, attacking the legality and validity of the proceedings under which she has been declared insane, alleging that she has been deprived of her liberty without the due process of law guaranteed to every citizen by the Fourteenth Amendment to the Constitution of the United States.

Before passing upon this question, it becomes necessary for us to determine what statute of this state controls the procedure in such cases.

It is admitted by respondent judge, district attorney, clerk, and sheriff that the proceedings complained of by relatrix were not conducted under Act 68 of 1918, but under section 1768 of the Revised Statutes of 1870 and under Act 264 of 1910.

There laws are in pari materia, and, when examined with reference to each other, it is

clear that proceedings *"in chambers"* are expressly authorized by section 1768 of the Revised Statutes. Act 253 of 1910 provides that the judge shall "issue his warrant ordering such person to be brought before him," language which may be construed as indicating also a proceeding *in chambers*. But Act 68 of 1918, the latest law on the subject, provides that "it shall be the duty of the said judge of the district court having jurisdiction of interdiction to issue his warrant ordering such person to be brought *in court* before him." (Italics ours.) Section 1.

[2, 3] The language of Act 68 of 1918 is mandatory, and clearly conveys the idea that a public hearing in open court is contemplated by this statute, which necessarily supersedes former statutes upon the same subject-matter. Act 68 of 1918 is entitled an act "to provide proper proceedings relative to the insane and for the admission of insane persons, whether indigent or otherwise, to the insane hospitals of the state," etc.

Section 7 of Act 68 of 1918 provides:

"That all laws ·or parts of laws on the same subject-matter, in conflict herewith, be and the same are hereby repealed, and especially is Act 253 of 1910 repealed."

This provision expressly repeals Act 253 of 1910 and abrogates by implication the proceedings "in chambers" provided for by section 1768. As Act 68 of 1918 covers the whole subject-matter of proper procedure in cases of criminal interdiction, and as such procedure is in direct conflict with the procedure prescribed by the section of the Revised Statutes, the decision as to the sanity vel non of the defendant under said section being left solely to the judge, "after proper inquiry into all the facts and circumstances of the case," we do not hesitate to hold that section 1768 of the Revised Statutes has been repealed by Act 68 of 1918.

Act 68 of 1918 is therefore the act to which we must look in determining the issue presented here as to the legality and validity of

153 LA.—27

the proceedings, ending in the certificate of the physicians declaring relatrix insane. The very purpose of Act 68 of 1918 is to secure to every person charged with insanity a fair and impartial public hearing, and to prevent conspiracies to declare innocent sane persons insane, and thereby deprive them illegally of their liberty or of their property through the devious method of star chamber proceedings, and upon a hearing purely ex parte.

That this is the plain intent of this act is abundantly shown by the safeguards which it has thrown around persons suspected of insanity in proceedings in cases of interdiction under it:

(1) None but "a respectable citizen" is permitted under said act to make "a written complaint or information" charging a person with being insane.

[4] (2) The judge is required to issue "his warrant ordering such person to be brought in court before him." This warrant is not only intended as notice to a person accused of insanity of the nature of the charge preferred against him, but it is the very foundation of his protection, the fundamental process itself, through the service of which his right to a public hearing is secured by law. It is therefore a highly essential part of the due and proper process of law prescribed by the act. This provision was intended to prevent arrests in secret and unknown to the public.

(3) By the requirement that the person shall be brought "in court," the full light of publicity is turned upon the proceedings, an open hearing is guaranteed, and an opportunity of defense afforded against the charge of insanity.

(4) Under the act, no physician related by affinity or consanguinity to the party accused, or interested in his estate, is permitted to serve as medical expert on the commission to be appointed by the court. The judge is

required to appoint on the commission with the coroner the physician of the person suspected of insanity, if he has any. The judge himself is made a member of this commission.

[5] (5) In addition to the medical experts, the judge is required, as a part of his inquiry into the sanity of the person brought before him, "to cause to be summoned witnesses who knew the person suspected of insanity." This is evidently for the protection of such person against a report founded solely on a medical examination. The law requires that the friends and acquaintances of the person under investigation be heard, as well as the physicians in the case, who "shall *in the presence of the judge, by personal examination of such suspected person and by inquiry, satisfy themselves and the judge* as to the mental condition of the person being examined. If the two physicians do not agree, the judge shall determine the issue." (Italics ours.)

The act contemplates the hearing of witnesses, expert and nonexpert, and the personal examination of the party suspected in open court and in the presence of the judge. These witnesses are called to testify in court at a public hearing as to facts affecting the sanity of the person on trial. That they should be duly sworn is' without question, as we know of no statute which exempts a witness from taking an oath when testifying in a judicial proceeding, and the act in question does not expressly exempt·them from being sworn in this particular proceeding under it.

That a person charged with insanity can be declared insane,· deprived of his liberty, and immured within the dismal walls of an insane asylum for months, years, and perhaps for a lifetime, upon mere opinions given and statements made by witnesses in court, without the sanctity of a solemn oath, is evidently without precedent, and clearly not within the intention of the act in question, which contemplates judicial proceedings conducted in due course and order.

[6] We find upon examination of the record and returns that no warrant was issued in this case for relatrix, that she was not brought into court for public examination and hearing, and that some of the witnesses were sworn while others were not.

[7] These omissions are flagrant violations of this salutary statute, and strike with nullity the proceedings culminating in the formal certificate of the physicians, declaring relatrix insane, as said proceedings were conducted clearly without the due process of law prescribed by Act 68 of 1918. We find also from the return of the respondent judge that he has not yet signed the judgment and commitment' warrant, as these are on a regular printed form furnished upon application by the superintendent of the state insane asylum, and these forms are only sent when there is a vacancy at the asylum for the patient.

[8] He suggests prematurity of action, for this reason, upon the part·of relatrix in making the present application to this court. This is not an appeal from a final judgment, for no appeal lies in such a case, but it is a proceeding under our supervisory jurisdiction to test solely the legality and validity of the proceedings resulting in a formal certificate.of interdiction. The merits of the case are not before us for review. The writ of certiorari arraigns the regularity of the proceedings of an inferior court, where there lies no appeal, by means of which proceedings absolutely void might be set aside.

The present application is therefore seasonably and properly before us.

For the reasons assigned, it is ordered, adjudged, and decreed that the proceedings and the formal certificate of physicians of date January 9, 1923, signed by respondent judge and by Dr. Charles F. Gelbke, coroner of the parish of Jefferson, and by Dr. C. V. Unsworth, and the report of said coroner and of Dr. C. V. Unsworth, of date January 8, 1923, in the cause entitled State of Louisi-

ana v. Julia Kern, In re Interdiction, No. 3707 on the docket of the Twenty-Eighth judicial district court for the parish of Jefferson, state of Louisiana, be, and the same are hereby, declared to be irregular, invalid and void, and are hereby set aside.

It is further ordered, adjudged, and decreed that a writ of peremptory prohibition issue to respondents, Hon. H. N. Gautier, judge of said court, Hon. C. A. Buchler, district attorney of said district, Frank J. Clancy, clerk of said court, and J. B. Dauenhauer, sheriff of said parish, prohibiting them and each of them from taking further proceedings in said cause, reserving, however, to respondents the right to proceed in said cause in accordance with the provisions of Act 68 of 1918 and the views herein expressed.

O'NIELL, C. J., and ST. PAUL and ROGERS, JJ., concur in the result.