Before we consider any of the various arguments presented by counsel for the petitioner, Rufus C. Bryant, we must first decide one question of law. For if this question is decided adversely to Bryant, his petition must be dismissed. That question is this: When a person has been committed to a state insane asylum under the provisions of Section 13 of Act 303 of 1944, and is later discharged from the institution on the ground that he is not insane, may he, by alleging and proving that the judgment of commitment was rendered without a hearing, obtain the annulment of that judgment?
On December 11, 1945, R.A. Johnson, an employee in the office of the Coroner for the Parish of Orleans, filed in the Civil District Court for the Parish of Orleans seventeen petitions in each of which he named one person as being an indigent, insane person who should be committed to one of the state hospitals for the insane. All of these petitions were filed in the same proceeding which was given the number 265,816 of the docket of the Civil District Court for the Parish of Orleans. Each petition contained an allegation that it was filed in conformity with the provisions of Act 303 of 1944.
In one of these seventeen petitions, Rufus C. Bryant was named as an indigent, insane person and we are now concerned only with the case of Bryant. *Page 234 
On December 12, 1945, one of the judges of the Civil District Court issued an order requiring Bryant to show cause on December 20, 1945 why he should not be adjudged an indigent, insane person and as such committed to one of the state hospitals for the insane.
This order also required that Bryant, within five days, should inform the Court of the name and address of his physician, if any, and the names and addresses of any witnesses he might desire to have summoned on his behalf. On that same day, December 12, 1945, the judge of the Civil District Court issued another order directed to the Civil Sheriff "or any other peace officer for the Parish of Orleans" commanding him to take into custody the said Rufus C. Bryant, to confine him in the City Mental Hospital until the 20th of December, 1945, and to produce him before the Civil District Court for the Parish of Orleans on the said 20th of December.
For the purposes of this case it is conceded that the return of the Civil Sheriff shows that these orders and the copy of the petition were served on Bryant on December 14, 1945.
On December 17, 1945, three days before the return day fixed in the order to show cause (December 20th), the judge of the Civil District Court rendered and signed a judgment declaring Bryant to be an indigent, insane person and ordering him committed to the State Hospital for Mental Diseases at Jackson, La. On December 20, 1945, he was taken to that institution.
Shortly thereafter he was released as being "without psychosis" which, it is conceded, means not insane.
On February 26, 1945, in the original proceeding in which he had been committed, Bryant brought this action, praying that the judgment under which he had been committed be declared "null and void ab initio."
There was judgment below in favor of Bryant. A new trial was granted and then there was judgment dismissing Bryant's petition. He has appealed.
Motion was made to dismiss the appeal, or, in the alternative, to transfer it to the Supreme Court. We overruled this motion. See In the Matter of Bryant, La. App., 29 So.2d 252.
In his original petition he made many charges against Johnson who had brought the commitment proceeding and against others who were involved therein, but all of those charges, for the present purpose of this case, have been abandoned and, in an amended petition, Bryant bases his prayer that the judgment be annulled ab initio on the allegation that that judgment was rendered without a hearing and before the return day which was fixed in the original order to show cause.
Whether there was a hearing before the judgment of commitment was rendered and whether Bryant was present at that hearing are matters now in dispute, but the view which we take of the law which is involved makes it unnecessary that we determine whether he was actually examined; whether he was notified of a hearing or whether a full and complete and proper hearing was actually had.
In Oliver v. Terrall, 152 La. 662, 94 So. 152, the Supreme Court was confronted with facts which we are unable to distinguish from those now before us. There, Preston Oliver, without a hearing, had been committed by judgment of the District Court to an insane asylum at Pineville, La. The judgment had been rendered under Act 68 of 1918, which was the statute then in force and which statute was expressly repealed by Act 303 of 1944, under which this proceeding against Bryant was brought. Apparently, Oliver was discharged from the institution and he then brought suit to "revoke" the judgment which in his petition he termed a "judgment of interdiction."
The Supreme Court held that such a judgment, even if rendered without a hearing, and without citation, could not be revoked or annulled for the reason that "his release put an end to the whole matter." The court said that such a judgment of commitment is nothing but an order that the person be confined and that when the confinement is terminated everything terminates with it. We quote from that opinion:
"But the fact of the matter is that this whole proceeding is irregular and unnecessary. *Page 235 
It does not appear from the petition whether said Oliver be or be not still confined in the asylum. If still confined, his remedy is by habeas corpus to obtain his release. If not still confined, then his release put an end to the whole matter, a commitment to an insane asylum not being an interdiction within the meaning of the Civil Code aforesaid, and no formal proceeding to revoke it being at all necessary."
The Court based its views largely on what it had previously held in an earlier case, Vance v. Ellerbe, 150 La. 388, 90 So. 735, 740, in which it had referred to the distinction between an interdiction and a commitment and had said:
"The law provided then, and has continued to do so until the present day, two separate proceedings for dealing with persons of unsound mind — the one for the restraining and confining of insane persons for their own and the public's protection, which is ex parte and in the name of the state; and the other dealing with the civil and property rights of such persons. One is informal, and need not be set aside when the patient recovers; while the other is highly formal, and requires all the solemnities of contested judicial proceedings including a formal judgment to restore civil rights after the mental derangement has ended."
Counsel for Bryant strenuously argues that if such a commitment without a hearing was authorized by the Louisiana Statute, Act 68 of 1918, that statute under which Oliver was committed was violative of the provisions of Section 2 of Article 1 of the Constitution of Louisiana and of Section 1 of the Fourteenth Amendment to the Constitution of the United States in that a judgment rendered under it would deprive the person committed of his rights and his liberty without due process of law. And counsel argues that if such a judgment of commitment without a hearing can be rendered under Act 303 of 1944, then for the same reason, that statute is unconstitutional. He maintains that the mere fact that Bryant has regained his liberty does not deprive him of the right to annul the judgment of commitment because he says that judgment hangs over him and, for the balance of his life, will seriously interfere with his right as a citizen to be free in the enjoyment of all of his faculties, and to use them in all lawful ways. He argues that the term "to be deprived of liberty" is not limited solely to physical restraint or confinement and he cites the following language of the Supreme Court of the United States in Allgeyer v. State of Louisiana,165 U.S. 578, 17 S.Ct. 427, 431, 41 L.Ed. 832:
"* * * The 'liberty' mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."
There is, no doubt, much force in this argument. Proof is not necessary to convince us that a person who has once been committed under such a judgment thereafter labors under a burden which, so far as is possible, should be removed. We doubt whether a second judgment decreeing the first to be a nullity would accomplish this result. It would add more publicity, and, it is publicity which is undesirable in such a situation.
But whether a judgment annulling the first would accomplish the desired result, we feel that we are powerless to render such a judgment in view of what the Supreme Court has said in the Oliver case, for it is plain that in that decision the Court held that there is nothing to annul and that regardless of whether the judgment should have been rendered, and regardless of whether there was any right to render it without a hearing, the entire matter terminated with the discharge of the committed person from the institution.
Counsel for Bryant, in an effort to distinguish or explain the decision in the Oliver case, has made a careful study and analysis of the record on file in the archives of the Supreme Court, and shows that the *Page 236 
petitioners there were under the impression that unless the judgment of commitment could be "revoked" Preston Oliver would forever labor under the effects of an "interdiction." Counsel says that all that the Supreme Court did was to say that the petitioners were mistaken in the belief that a judgment of commitment has the effect of an interdiction; that therefore all that was necessary was for the Supreme Court to say that such a judgment need not be annulled or revoked or set aside in any way. He says that, since all that petitioners wanted was to be assured that there was no interdiction hanging over Oliver, the Supreme Court found it "unnecessary" to annul or revoke the judgment.
Counsel says too that another distinction lies in the fact that Oliver sought to "revoke" the judgment, whereas here Bryant is attempting to have it "annulled." The fact is that Oliver sought to revoke the judgment on the ground that it was a nullity since it had been rendered without a hearing. That is exactly what Bryant is attempting to do here.
To revert to the argument that a distinction lies in the fact that Oliver was unnecessarily seeking to annul the judgment in order to avoid the effect of an interdiction, whereas here Bryant is seeking to annul a similar judgment because it casts a stigma upon him, we have only this to say; that whatever the reason may be for wishing the judgment annulled, the relief sought is the same; the annulment of the judgment. This is what the Supreme Court refused to do in the Oliver case, holding that with the termination of the commitment there was nothing left of the judgment; there was nothing to annul.
Counsel for Bryant directs attention to State v. Kern,153 La. 829, 96 So. 672, 674, decided by our Supreme Court on February 26th, 1923, several months after the decision in the Oliver case, and he argues that the latter Kern decision, in effect, overrules the earlier holding in the Oliver case. We do not think that this is so and we feel that there is a vast distinction between the two cases.
As we have already shown, the facts in the Oliver case were identical with those before us now. Oliver had been committed without a hearing and had been discharged from the hospital and had petitioned for a "revocation" of the judgment under which he had been committed. In the Kern case the situation was quite different — Mrs. Kern had been charged with murder. The District Attorney, believing her insane, had sought to have her mental condition examined into. In due course she had been ordered committed to a state institution but before she was actually committed, she applied to the Supreme Court for writs of certiorari and prohibition. The Supreme Court held that the commitment had been ordered under the provisions of Act 68 of 1918 and that for various reasons the proceedings were "irregular, invalid and void." But there the writs were applied for and granted before the judgment committing her to the institution had been executed. In the Oliver case, as in the case at bar, the judgment had already been executed and its effect had completely terminated.
Because of the holding in the Oliver case, we feel that there is nothing to annul.
The judgment which is now before us is affirmed at the cost of appellant.
Affirmed. *Page 277 
Since this cause must be remanded for further proceedings in the court below, we deem it inappropriate and inopportune to treat the assignment of error presenting the action of the court in overruling the motion for a new trial. To do so would of necessity require us to comment on the evidence and might result in an unfair animadversion of its tendencies.
For error indicated, it is ordered that the judgment of the primary court be reversed and the cause remanded.
Reversed and remanded.