182 So. 318,

**STATE v. CONNALLY.**

No. 34880.

May 30, 1938.

D. Cameron Murchison, of Alexandria, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and A. V. Hundley, Dist. Atty., and Ben F. Thompson, Jr., Asst. Dist. Atty., both of Alexandria, for the State.

HIGGINS, Justice.

The defendant was charged, tried and convicted of breaking into and entering a dwelling house with intent to steal on December 18, 1937. After his conviction, but before being sentenced, the attorney appointed by the court to represent the defendant, who was in indigent circumstances, filed an exception to the jurisdiction of the court ratione materiae on the ground that the accused was under seventeen years of age at the time of the commission of the alleged offense. After the introduction of evidence on the issue and argument, the district judge overruled the exception and denied a motion for a new trial, which was pleaded in the alternative. A bill of exception was duly reserved. The defendant was sentenced to five years of hard labor in the penitentiary and he appealed.

Under the provisions of Sections 52 and 53 of Article 7 of the Constitution of 1921 and Section 7 of Act No. 83 of the Extra Session of the Legislature of 1921, the district court is without jurisdiction ratione materiae to try for a criminal offense an accused, who, at the time the act was committed, was less than seventeen years old. Such violation of the law constitutes delinquency and the defendant can only be proceeded against as a delinquent juvenile. It is immaterial that at the time of the trial the accused was seventeen years old because the governing factor is his age on the date he committed the offense and he cannot be prosecuted as a felon. State v. Grayson, 170 La. 111, 127 So. 382; State v. Walker, 178 La. 635, 152 So. 315.

In the case of State v. Malone, 156 La. 617, 100 So. 788, the Court said (page 789):

"The accidental arrival of the seventeenth anniversary of his birthday before his trial no more operated to deprive that court of jurisdiction over him than it operated to magnify his offense and subject him to the jurisdiction of the district court. The delinquent child is not to be punished, but he is nonetheless to be reformed; and that reformation is to be under the eye of the juvenile court."

On the trial of the exception, Nancy Clark Connally, the mother of the accused, testified that she was first married to Obie

Johnson and the sole issue of their union was a male child, Willie B. Johnson, who was still living; that Obie Johnson died on December 30, 1918, and she then married Willie Mason by whom she had only one child, a boy, Ernest Mason, who was also known as Ernest Connally, the defendant in this case; that Ernest was born on February 1, 1921 and she remembers the date, because her father died on December 22 or 23, 1920, at which time she was in an advanced stage of pregnancy and unable to attend the funeral; that she also recalls the date from having written it in her Bible but was unable to produce this Bible because her sister's children had destroyed it; that Dr. H. J. Yoist, a colored physician, and aunt Rachael waited on her at Ernest Mason's birth; and that she subsequently married Connally and her son became known as Ernest Connally. She states that the only child born to her on February 1, 1921 was the accused and that she had never had a child by the name of "Elsie" or "Eloise", and that the only girl she ever gave birth to was her daughter, Rosalie Ladell, who was eleven years old at the time of the trial. She admitted that this little girl was born while she lived in concubinage with one Jack Ladell.

The birth certificate shows that Dr. Yoist attended Nancy Clark, wife of Willie Mason, at the birth of a child born to her and Willie Mason on February 1, 1921, by the name of "Elsie". Nancy says that this certificate was in fact and truth the recordation of the birth of Ernest Mason and that the doctor, in filling out the attending physician's statement, erroneously wrote the name "Elsie" Mason and indicated the sex of the child as "female", and that these mistakes are obvious ones for no other child was born of her marriage with Willie Mason, except Ernest Mason. The father, the physician and the midwife were all dead at the time of the trial.

The records of the registrar of vital statistics at Alexandria, Rapides Parish, show the birth of a "female" child by the name of "Eloise", born of the union of Nancy Clark and Willie Mason on February 1, 1921.

The mother's testimony is corroborated in all important respects by that of Nathan Taylor, a distant relative, Phylis Clark, her sister-in-law, and Isabel Jackson, her stepmother, all of whom lived in the same neighborhood with the mother for many years before and after the birth of the accused. They are emphatic in their statements that Nancy Clark never gave birth to a female child by the name of "Elsie" or "Eloise", and that there was never a female child born of her union with Willie Mason. They fixed the date of the birth of Ernest, the accused, by different happenings in their lives and all of them recalled the fact that Nancy was unable to attend her father's funeral in December, 1920, because of her delicate condition.

Jack Ladell, one of the defendant's witnesses, testified that, after Willie Mason died, he lived with Nancy Clark Mason as his common law wife, or in concubinage, for about seven years and that of their relations there were two children born, Rosalie Ladell, a girl who was eleven years

old at the date of the trial, and Vincent, a male child. He states that there never was a female child born to them by the name of "Elsie" or "Eloise" and that the only daughter Nancy had was the one by him. He says that the accused is not his son. On cross-examination, he testified that he had lived with Nancy for approximately seven years and then separated from her for about six years, and lived with another woman for about five or six years, and that Ernest, the accused, at the time he started living with the child's mother, was about two years old.

The State offered the testimony of the two arresting officers, who stated that the accused told them he was nineteen years of age.

A former employer of the accused stated that in 1935 and 1936 he paid the accused the wages of a man during the time he worked on his place and that he looked to be about sixteen or seventeen years of age then. He further stated that he determined Ernest's age from his physical appearance.

The district judge in his per curiam states that the accused appeared to be more than seventeen years of age, because of his height and weight and his cunningness in performing the burglary indicated intelligence greater than that possessed by the average seventeen year old boy. He pointed out that by adding the estimates of time given by Jack Ladell, the accused would be nineteen or twenty years of age, which corroborated the testimony of the arresting officers, and that, in his opinion, the accused was above the age of seventeen years at the time of his unlawful act. He further stated that the birth certificate apparently records the birth of a sister of Ernest, who was born when he was about two years old.

In State v. Walker, supra, where the facts were similar to those of the instant case, this Court set aside the conviction and sentence without prejudice to the rights of the State to proceed against the defendant in the Juvenile Court, saying:

"But an admission by a juvenile as to his age cannot outweigh positive testimony of his mother and her sister giving the exact date of his birth and showing to be under the age of 17 years; and in our opinion the evidence of the mother is not impeached by the fact that, although she testifies that she did not see the juvenile officer on the former occasion, he testifies that she did see him and did give him the age of the juvenile at the time; for it may well be that the juvenile officer mistook the admission of the juvenile himself for the statement of his mother, and moreover the testimony of the mother is corroborated by that of her sister whose testimony is unimpeached."

See, also, State v. Bennett et al., 181 La. 269, 159 So. 385.

In State v. Duckett et al., 160 La. 920–923, 924, 107 So. 696, 697, in setting aside the conviction and sentence, this Court said:

"In other words, the testimony should be clear and convincing that the person charged is over 17 before he is put on trial for such offense.

"In cases where there is a serious and substantial doubt arising from the evidence

on the question of age that doubt should be solved in favor of the child.

"And we say this for the reason that the law is imperative that no person under the age of 17 shall be held to answer, put on trial, prosecuted, or punished for any crime (murder and one other excepted) where such person is under the age of 17 at the time such crime was alleged to have been committed.

\* \* \* \* \* \*

"There can be no doubt that the appearance of a person is a circumstance which should be given due consideration in determining his age in a case like the present one, still we are of the opinion that such a fact should not be permitted to outweigh or overcome positive testimony and facts and circumstances which show the party to be under the given age."

There can be no doubt that error was committed in recording the birth of the child born on February 1, 1921, when, in one instance the name "Eloise" and in another that of "Elsie" is given in the records themselves. These names and the name "Ernest" could have been very easily confused, particularly if the handwriting of the physician was indistinct and not legible. It was established that the doctor who attended Nancy was the one who apparently made out and filed the birth certificate. An error in recording the name could therefore have been easily made.

The evidence overwhelmingly shows that a male and not a female child was born of the parents in question on February 1, 1921, and that the only female child born to Nan-

cy Clark at any time was Rosalie Ladell, who was only eleven years of age when the case was heard. Even the testimony of Jack Ladell, whom the court believed as far as the approximation of various periods of time was concerned, corroborated the mother and the other witness in that Nancy Clark only had one female child.

It is our opinion that the evidence shows that a mistake was made in giving the sex and name of the child in the birth certificate and that the testimony of the defendant's witnesses, as well as the birth certificate, prove that Ernest Mason, the accused, was born on February 1, 1921.

For the reasons assigned, the verdict of the jury and the sentence of the court are annulled and set aside without prejudice to the right of the State of Louisiana to proceed against the defendant, Ernest Mason, in the juvenile court as a delinquent minor.