21 So.2d 499

**STATE v. BROCKNER.**

No. 37701.

Dec. 11, 1944.

On Rehearing Feb. 19, 1945.

Arthur Landry and Nicholas G. Carbajal, both of New Orleans, for relator.

HAMITER, Justice.

In an application filed on October 19, 1944, invoking the supervisory jurisdiction of this court, relatrix, Mrs. Lorell Smith Brockner, made the following narrated factual allegations.

She is a widow by divorce, is sixteen years of age and a resident of New Orleans, and is the mother of an infant child, Bertha Ann Matheny Brockner, born June 24, 1943. She kept the child with her in New Orleans until June 18, 1944, when, because of having secured employment, she placed it with Mrs. Joseph Jacobi, whose home is in Madisonville, St. Tammany Parish, agreeing to pay the sum of $15 bi-weekly for its care and support. Several times thereafter she demanded of Mrs. Jacobi, at the latter's home, the return of the child, but on each occasion this was refused and bodily harm to her was threatened if she did not depart. Neither Mrs. Jacobi nor Mr. Jacobi is related to her or her child by blood or affinity. On August 11, 1944, Monroe Simmons, Probation Officer of St. Tammany Parish, made and filed in the Juvenile Court of that parish an affidavit charging that her daughter was a neglected child.

Determined to obtain possession of her offspring, she further alleged, she and an escort went to the Jacobi home on October 7, 1944, and, after a scuffle with Mr. and Mrs. Jacobi, she secured that possession and brought the child to the City of New Orleans. While engaged in the undertaking, she produced a pistol in an effort to protect herself from the Jacobi dog; but she did not discharge the weapon be-

cause Mrs. Jacobi stood between her and the dog.

On October 9, 1944, relatrix was arrested in New Orleans, under a charge of attempting to kill made against her in the District Court of St. Tammany Parish, and was incarcerated in the St. Tammany Parish jail. There she remained until October 17, 1944, when she was released on bond.

The child, on October 16, 1944, while residing at the premises No. 1410 Evelina Street in the Algiers section of New Orleans, was seized and taken by certain officers of the law to Covington, St. Tammany Parish.

On being released from jail on bond, relatrix was served with an order to appear in the Juvenile Court of St. Tammany Parish on October 20, 1944, and there show cause why her daughter should not be adjudged a neglected child for the reasons set out in the affidavit filed on October 16, 1944.

After making the recited allegations, relatrix prayed for the issuance by us of a writ of prohibition, forbidding the Judge and the Probation Officer of the Juvenile Court of St. Tammany Parish from proceeding further with the case involving her child. Additionally, she prayed that those officials, as well as the St. Tammany Parish Welfare Department, be directed, under a writ of habeas corpus, to produce the child before this court and that, after due hearing, her daughter "be at once released and restored to liberty, with full power to return to the care and keeping of her mother * * *."

The theory underlying the demand of relatrix is that the Juvenile Court of St. Tammany Parish is without jurisdiction of the matter, she emphasizing that her domicile, as well as that of the child, is in the Parish of Orleans and that the child was actually in such parish when the officers seized it.

On the showing made, we ordered, through the writ of certiorari, the filing here of the record of the proceeding of which complaint is made. Further, we caused the issuance of a rule nisi, accompanied by a stay order, directing the St. Tammany Parish Juvenile Judge and Probation Officer, and the Department of Public Welfare of Louisiana, to show cause why the relief prayed for by relatrix should not be granted.

In his return to the rule, the respondent judge stated as follows:

"That based on the affidavit filed against the minor, named Bertha Ann Brockner, in Juvenile Court of St. Tammany Parish, Louisiana, on October 16, 1944, and the information therein presented, he executed an order providing for the issuance of a warrant for the arrest of such child, placing the temporary custody of said child with the St. Tammany Parish Welfare Department until trial of such case, and further providing for the issuance of an order to mother of said child to show cause on October 20, 1944, at 10 o'clock A. M. why the custody of such child should not be de-

termined. Said order being dated October 16, 1944.

"That furthermore he issued a warrant for arrest of said child and same was duly executed and child placed with St. Tammany Welfare Department.

"Such case has never been tried or submitted to court and respondent has no information with regard to the facts of such case or the jurisdiction of this Juvenile Court other than those disclosed by the affidavit filed by the Probation Officer; and your respondent respectfully submits the matter to your Honorable Court.

"And in obedience the writ herein issued there is attached hereto a certified copy of the record in these proceedings including the warrant so issued."

The Probation Officer, in his original answer, made the following averments:

At the time of the filing of his affidavit of August 11, 1944 (the first one charging neglect), the child was physically in St. Tammany Parish and had been there for about two months. The affidavit was based on what he considered reliable information. On the evening of September 17, 1944, when relatrix called to see him about the child, he informed her of the filing of the neglect charge and also of his having requested the St. Tammany Welfare Department, a state agency, to make a full and complete investigation of the facts surrounding the case. Further, he remarked that if the results of such investigation were favorable to her he would cause a discontinuance of the proceedings. With this proposal, on her leaving, he believed

her to be fully satisfied. After his learning of the occurrence of October 7, 1944, which resulted in the child's removal from the Jacobi home to New Orleans and the incarceration of relatrix, and on his being further informed that the child was being neglected, he filed the second affidavit of date October 16, 1944, this also charging neglect. On this affidavit he procured the issuance of the court order and the warrant required for obtaining custody of the child. After seizing the child in New Orleans, the officers placed it with the St. Tammany Parish Welfare Department, which is using Mrs. Jacobi as personal custodian pending trial of the proceedings. No plea to the jurisdiction of the St. Tammany Parish Juvenile Court has been filed or tendered there, and the jurisdictional question concerning that court is raised here for the first time.

In the return or answer of the State Department of Public Welfare, that agency disclaims all knowledge of the proceedings respecting the custody of the infant child of relatrix. However, the respondent Probation Officer, in a supplemental answer, shows that Miss Worth Dinwiddie, head of the agency's St. Tammany Parish unit, was and is fully informed about the matter.

It is with the application of relatrix and the returns of the several respondents that the present consideration deals; and involved is only the issue of the Juvenile Court's jurisdiction.

Ordinarily we will not interfere with the proceedings of an inferior court because of its lack of jurisdiction until after a plea

asserting the jurisdictional deficiency has been presented to and overruled by that court. That this is the general rule is clearly recognized and stated in our jurisprudence. State v. City of New Orleans et al., 149 La. 788, 90 So. 196; In Re Sherill, 204 La. 1096, 16 So.2d 885.

The Sherill case, a controversy strikingly similar to the instant one, involved the question of the custody of a minor child in a Juvenile Court proceeding predicated on an affidavit charging it with being neglected. There, as here, the mother of the child applied to this court for a writ of prohibition, contending that the Juvenile Court was without jurisdiction ratione personae. But, since she had failed to raise that issue in the inferior court and secure a ruling thereon (just as relatrix herein has failed to do), we declined to grant the relief requested.

Of course, a difference to be noticed between the Sherill case and this cause is that here relatrix, besides asking for the writ of prohibition, has made application for the writ of habeas corpus. This court, it is true, has the authority to issue the writ of habeas corpus in behalf of any person in actual custody. Article VII, Section 2 of the Louisiana Constitution. But, as pointed out in previous decisions, we shall abstain from granting this extraordinary order where it may well be done in competent lower courts, unless there exist special circumstances in a case making immediate, direct action or intervention necessary or expedient, or when prompt and adequate relief is not otherwise available. State ex rel Baumann v. Langridge, Sher-

iff, 44 La.Ann. 1014, 11 So. 541; State v. Woods, 154 La. 631, 98 So. 47; State ex rel Haas v. Sisters of the Convent of the Good Shepherd, 181 La. 628, 160 So. 121. No special circumstances are disclosed by the record in the instant matter warranting our issuing this writ and preventing the Juvenile Judge from performing the duty, legally his under the well-recognized general rule, of passing upon the challenge made to his court's jurisdiction. Obviously, we can not assume that he will act arbitrarily and capriciously in the discharge of that duty. To the contrary, the presumption is, and we certainly believe, that he will give fair and impartial consideration to a jurisdictional plea when it is tendered.

If, after the attack is made, relatrix is unsuccessful in her efforts, the court's ruling can then be reviewed by us. Should, on the other hand, the plea be sustained, the child will be restored to her custody and her purpose completely accomplished. In the meantime, the daughter will be in the care of Mrs. Jacobi, under the supervision of the St. Tammany Parish Unit of the Department of Public Welfare, to whom relatrix herself originally entrusted it and in whom, as shown by that act, she possessed confidence as being a proper and suitable person for its safe keeping.

For the reasons assigned the rule to show cause is recalled, the granting of the writs of prohibition and habeas corpus is refused, and the relief prayed for by relatrix is denied.

HIGGINS, J., concurs in decree.

On Rehearing.

ROGERS, Justice.

As shown in the opinion handed down on the original hearing, this proceeding involves an application addressed to this court for writs of prohibition and habeas corpus. The application is made by Mrs. Lorell Smith Brockner, the mother of an infant child, Bertha Ann Matheny Brockner. The writ of prohibition is invoked under the supervisory jurisdiction of the court and the writ of habeas corpus is applied for under the original jurisdiction of the court. The case was submitted for decision on the verified pleadings and documents appearing in the record. They disclose the following essential facts.

Mrs. Lorell Smith Brockner, a resident of the City of New Orleans and the applicant for the writs, was divorced by judgment of the Civil District Court for the Parish of Orleans on November 15, 1943. After the judgment of divorce was rendered, Mrs. Brockner, who is only sixteen years of age, resumed her maiden name.

On June 24, 1943, her infant child, Bertha Ann Matheny Brockner, was born in New Orleans where her birth was duly registered. Mrs. Brockner kept her child with her until June 18, 1944, when, having secured employment, she placed her child in the care of Mrs. Joseph Jacobi, in the City of New Orleans, under an agreement to pay Mrs. Jacobi $15 every two weeks for the child's support, making the first payment at the time the agreement was entered into. Mrs. Jacobi carried the child to Madisonville in the Parish of St. Tammany where she resides. Two weeks later Mrs. Brockner called at the home of Mrs. Jacobi in Madisonville for the purpose of making another payment to Mrs. Jacobi for caring for her child, but Mrs. Jacobi refused to accept the payment. On July 18, 1944, Mrs. Brockner returned to Madisonville and requested Mrs. Jacobi to permit her to see her child, but she was refused the right to do so. On August 13, 1944, Mrs. Brockner again went to the home of Mrs. Jacobi in Madisonville, determined to obtain possession of her child, but she was compelled to leave the premises because Mr. and Mrs. Jacobi threatened her with bodily harm if she did not do so and they actually sicked their dog on her. On that occasion, Mrs. Jacobi informed Mrs. Brockner that the court had given the child to her. Mrs. Brockner then sought the help of the local welfare society which directed her to the Juvenile Court. She also sought the help of the Legal Aid Society of New Orleans and of the New Orleans Item.

On August 30, 1944, J. S. Hay, Circulating Manager of the New Orleans Item, addressed a letter to the "Presiding Judge, Juvenile Court, Covington, La.," in regard to the matter. Under date of September 6, 1944, the Deputy Clerk of Court replied to the letter of Mr. Hay, advising him that an affidavit was "filed (in the Juvenile Court) on information furnished showing a minor child of the name of Bertha Ann, whose mother is named as 'Lorell Smith,' which child is now in the care and custody of residents of Madisonville, La., pending disposition of the case." The writer closed the letter with the suggestion that the moth-

er of the child contact the Probation Officer of St. Tammany Parish who filed the affidavit on August 11, 1944. Persisting in the determination to obtain possession of her infant child, Mrs. Brockner, accompanied by a male escort, went to the Jacobi home on October 7, 1944, and after a scuffle with Mr. and Mrs. Jacobis, in which she appears to have been beaten by the Jacobis, succeeded in obtaining possession of her child, which she brought to the City of New Orleans. During the scuffle Mrs. Brockner produced a pistol in order to protect herself from an attack by the Jacobi dog, but she did not discharge the pistol because Mrs. Jacobi got between her and the dog.

On a charge of attempt to kill made against her in an affidavit filed in the District Court of the Parish of St. Tammany, on October 9, 1944, Mrs. Brockner was arrested in New Orleans and taken to the Parish of St. Tammany where she was placed in the Parish jail. Pending her efforts to obtain bail, she remained in jail from October 9th to October 17th when she was released on bond. On October 16, 1944, while Mrs. Brockner was still in jail, acting under an order of the District Court of St. Tammany Parish, an officer of that court, accompanied by some policemen of the City of New Orleans and Mrs. Jacobi, called at the home of Mrs. Brockner at 1410 Evelina Street in the Algiers section of New Orleans where they seized Mrs. Brockner's child and brought her back to the home of Mrs. Jacobi in the Parish of St. Tammany.

The affidavit made by the Probation Officer of St. Tammany Parish on August 11, 1944, contains the following averments:

"That Bertha Ann, whose mother is named Lorell Smith, a minor or infant child of tender age, issue of said Lorell Smith, and the name of whose father is unknown to affiant, is a neglected child within the provisions of Sections 1683 et seq. of the Louisiana General Statutes in that: The mother of said child is not in proper circumstances to care for such child and is not the proper person for such care and custody, and no provision has been made for the care, custody and control of said child, and it is without proper or adequate legal guardianship or fixed and determined abode; that the mother of said child, some two months ago, gave such child to Mrs. Louise Jacobi, wife of Joseph Jacobi, reputable citizens of St. Tammany Parish, La., and thereafter disappeared for some time only recently again appearing. That said child has been in the care, custody and control of the said Mrs. Louise Jacobi for over two months and should remain in her care, custody and control in order that adequate provision, homelife, and guardianship may be provided for such infant.

"As aforesaid, affiant makes this affidavit on information and belief and for the purpose of having the Juvenile Court of St. Tammany Parish, Louisiana, decree and declare said child to be neglected and to award the care, custody and control of said child to said Mrs. Louise Jacobi, wife of Joseph Jacobi, according to law.

"And affiant prays that a copy of this affidavit be duly served upon the mother of said child when and if possible and that a trial thereof be had as soon as circumstances permit."

The affidavit made by the Probation Officer of St. Tammany Parish on October 16, 1944, omitting its formal parts and the jurat, reads as follows:

"That Bertha Ann Brockner, whose mother is named Lorell Smith Brockner, née Smith, a minor or infant of tender age, issue of said Lorell Brockner, is a neglected child within the provisions of section 1683 et seq., of the Dart's Louisiana General Statutes, being Act Number 83 of the Legislature of 1921, extra session, in that: The mother of said child is not a fit or proper person for the care and custody of said child, particularly because she stands charged with crime in the 22nd Judicial District Court for this Parish, and for other reasons to be shown to the Court in due course; that no provisions have been made for the care, custody and control of such child and it is without proper or adequate legal guardianship or fixed place of abode; that after permitting the custody of such child to be with Mrs. Joseph Jacobi, and her husband, reputable citizens of St. Tammany Parish, for some months, and pending investigation by the Probation Officer and the Public Welfare Department of the State of Louisiana of the fitness of said mother to regain possession of such child, said mother as principal with one Dalton R. Matheny did, by force of arms and thru commission of a serious crime enter the home of said Mrs. Joseph Jacobi and forcibly remove and secrete said child;

"That affiant makes this affidavit for the purpose of having the Juvenile Court of this Parish decree and declare said child to be neglected and to award the care, custody and control of said child to some fit and proper person or institution in the jurisdiction of the Court. That said child was and had been in the Parish of St. Tammany until the 7th of October, 1944, when it was forcibly taken away by said mother and her principal, Dalton R. Matheny.

"That any summons to produce said child before the Court will prove utterly ineffectual and it is necessary and expedient that the Court issue a warrant for the arrest of said child itself so that it may be before the Court for proper disposition, and that pending trial the Court place such child in the custody of some person, institution, or association deemed proper in the judgment of the Court.

"That the mother of said child, said Lorell Smith Brockner, should be summoned to appear and answer this charge at a time to be fixed by the court, and, if necessary, that a warrant issue for her arrest for contributing to the neglect of such child; that she be ordered to show cause why the custody of said child should not be determined as above set out."

On her release on bond from jail in St. Tammany Parish on the evening of October 17, 1944, Mrs. Brockner was served with an order issued in the matter entitled "State of Louisiana vs. Bertha Ann Brock-

ner, Number ———, Juvenile Court, St. Tammany Parish, Louisiana," commanding her to appear in that court on October 20, 1944, at 10 o'clock a. m., and show cause why Bertha Ann Brockner, her infant child, should not be declared a neglected child under Act 83 of 1921, Extra Session, for the reason set forth in the affidavit of the Probation Officer filed in the Juvenile Court on October 16, 1944. Without appearing or pleading in the Juvenile Court for the Parish of St. Tammany, Mrs. Brockner applied to this court for a writ of prohibition prohibiting the Probation Officer and the Judge of the Juvenile Court from proceeding further with the case involving the custody of her infant child and also for a writ of habeas corpus directed to the Probation Officer, the Judge of the Juvenile Court, the Welfare Department of St. Tammany Parish and Mr. and Mrs. Joseph Jacobi, commanding them, or either of them, to produce her child before this court and that, after due hearing, her infant child be at once released and restored to liberty with full power to return to the care and keeping of her mother. All the parties named as respondents were duly notified by Mrs. Brockner, through her attorneys, of her intention to make the application. We granted the application to the extent of ordering that the proceedings of which the applicant complained be filed in this court and ordering that a rule nisi, accompanied by a stay order, be issued directed to the Probation Officer and the Judge of the Juvenile Court for the Parish of St. Tammany to show cause why the relief prayed for by Mrs. Brockner

should not be granted. The return of the Judge of the Juvenile Court to this rule is set forth in full in our opinion on the original hearing.

The Probation Officer of St. Tammany Parish filed an original and a supplemental answer to the rule nisi issued herein. In his original answer, the Probation Officer avers that the affidavit of August 11, 1944, was based upon what he considered to be reliable information; that at the time of the filing of the affidavit the infant child of Mrs. Brockner was temporarily in the Parish of St. Tammany and had been there for about two months and for that reason affiant "urges that the Juvenile Court of said parish (St. Tammany) has jurisdiction of the case." Respondent alleges that on the evening of October 17, 1944 (obviously when she was released from jail), Mrs. Brockner called on him in regard to her child and he then informed her of the filing of the affidavit charging that the child was a neglected child, and also that he had requested the St. Tammany Welfare Department, a state agency, to make a full and complete investigation of the facts; that he further stated if the result of the investigation was favorable to her, he would file the necessary proceedings to discontinue or withdraw the affidavit, but that if the result was "adverse to her" he would feel impelled to ask such court (the Juvenile Court) to determine the issues involved; that "relator (sic) then left and respondent believed she was fully satisfied with the fairness of the only position he could take in the impartial discharge of the duties of his office." Respondent alleges.

that after he was informed Mrs. Brockner, accompanied by a male escort, had taken the child into her possession and removed it from the home of Mr. and Mrs. Jacobi to the City of New Orleans under circumstances which resulted in the filing of criminal charges against her by the aggrieved parties, and being informed of the neglect of the child "at the house 1410 Evelina Street in Algiers," he filed the second affidavit in the case on October 16, 1944; that based on this affidavit, respondent procured the issuance by the Juvenile Court of St. Tammany Parish of the order and warrant under which the deputy sheriff of St. Tammany, accompanied by Mrs. Jacobi and two police officers of the City of New Orleans, proceeded to No. 1410 Evelina Street in Algiers where they seized and took possession of Mrs. Brockner's infant child. After obtaining possession of the child, the deputy sheriff brought it to Covington, the parish seat, where, in accordance with the order of the Juvenile Court, he placed the child with the St. Tammany Parish Welfare Department which, in turn, because of "necessity" placed the child in the custody of Mrs. Jacobi pending the final disposition of the case. Respondent alleges that no plea to the jurisdiction of the Juvenile Court of St. Tammany Parish was filed or tendered in the Juvenile Court and that such an issue is raised for the first time in the proceeding before this court.

By a supplemental answer, the Probation Officer of St. Tammany Parish sets forth that Miss Worth Dinwiddie, the head of the Parish unit of the State Welfare Department was and is fully informed about the case; that although Miss Dinwiddie was not in Covington on October 16, 1944, when he filed his second affidavit, "on the following morning of October 17, 1944, respondent verbally repeated all of such information (concerning the case) to her and understood that said department was accepting the responsibility of said child's temporary custody in accordance with the terms of such order." Respondent alleges that when informed of the arrangements by which Mrs. Brockner's infant child was placed in the temporary care of Mrs. Jacobi, who was accustomed to attending it, Miss Dinwiddie "agreed to or acquiesced in the same and said Mrs. Jacobi has since been keeping and caring for the child under such conditions, and respondent and said officers have understood that said Welfare Department had accepted full responsibility under said Order (of Court) and submits that it (the Welfare Department) is in constructive possession of the child under the authority of said order of court."

Answering the rule nisi issued by this court, the State Department of Public Welfare denies that it is now or ever has had the custody of Mrs. Brockner's infant child or that it had any knowledge of the proceedings in the Juvenile Court of St. Tammany Parish. Respondent shows "that it has no active case on the child, Bertha Ann Matheny, as no application in regard to said child has been made to the Department of Public Welfare." Respondent alleges that the first knowledge respondent had of the order of the Juvenile Court of St. Tammany Parish of date October 16, 1944, was when respondent received, through the

United States mail, a copy of the petition of Mrs. Brockner addressed to this court asking for writs of prohibition and habeas corpus. In a supplemental answer to the rule nisi, the State Department of Public Welfare, explaining certain allegations contained in its original answer, alleges that the investigation referred to by the Probation Officer of the Juvenile Court of St. Tammany Parish was made as an agent of the court and not of the Department of Public Welfare.

Mr. and Mrs. Joseph Jacobi did not answer the rule nisi herein nor have they made any appearance whatever in this court in opposition to the application of Mrs. Brockner for the writs of prohibition and habeas corpus.

In the opinion handed down on the original hearing, we correctly stated that the jurisdiction of the Juvenile Court for the Parish of St. Tammany is the only issue presented for our consideration. In passing upon that issue we adhered to the well-settled rule that this court will not issue a supervisory writ nor a writ of habeas corpus for alleged want of jurisdiction in a court of inferior jurisdiction until a plea to the jurisdiction has been presented to and overruled by that court. Accordingly, because we thought no special circumstances were disclosed by the record warranting the issuance of the writs applied for in this proceeding and thereby prohibiting the Judge of the Juvenile Court from determining the jurisdiction of his court, we entered a decree recalling the rule to show cause, refusing to issue writs of habeas corpus and denying the relief prayed for by Mrs. Brockner. However, on the application for a rehearing filed by Mrs. Brockner, we concluded to reopen the case for further consideration of the issue involved herein.

After the application for rehearing was granted, Mrs. Brockner filed a motion in this court for judgment on the face of the record. In her motion she alleges, among other things, that her attorneys were informed by the District Attorney of the Parish of St. Tammany that all criminal charges made against Mrs. Brockner in that parish had been dismissed. Subsequently, the attorneys for Mrs. Brockner filed in this court a letter addressed to one of them by the District Attorney for the Parish of St. Tammany advising him that the statement in the motion regarding the dismissal of the charges against Mrs. Brockner is erroneous. In his letter the district attorney states that he has not filed a bill of information against Mrs. Brockner because he is informed that she is a juvenile, but that the affidavits originally filed against her "are still very much alive."

Under the provisions of the Constitution, this court has discretionary power to exercise or to refrain from exercising original jurisdiction in habeas corpus proceedings, and it may, and ordinarily does require, that resort be had first to a court or to a judge of a court of inferior jurisdiction having authority to issue the writ. Constitution 1921, Art. 7, sec. 2. But there may be and sometimes are circumstances in a particular case making direct action

or intervention by this court necessary or expedient under its original jurisdiction of habeas corpus proceedings.

In view of the nature of the case and the situation of the parties, we have reached the conclusion on further study of the matter that, contrary to the view expressed on the original hearing, it is one of those exceptional cases which authorizes an original application to this court for habeas corpus.

The entire history of the case, which we have hereinabove set forth, presents a situation which, in our opinion, warrants its submission to this court in the first instance in order that the court may finally dispose of the questions involved therein.

The case, under the facts disclosed by the record, impresses us as one in which Mr. and Mrs. Jacobi, who are not related either by blood or affinity to Mrs. Brockner or her infant child, are seeking through the instrumentality of the courts and social agencies of the State to deprive Mrs. Brockner of her child in order to secure the child for themselves. Thus, the affidavit of the Probation Officer of date August 11, 1944, made solely on information obviously furnished by Mr. or Mrs. Jacobi, or both, charges that the infant child of Mrs. Brockner is a neglected child. After alleging in general language that the mother of the child is not in proper circumstances and is not a proper person to care for the child, which is without legal guardianship or fixed abode, the affidavit sets forth:

"That the mother of said child, some two months ago, gave such child to Mrs. Louise Jacobi, wife of Joseph Jacobi, reputable citizens of St. Tammany Parish, La., and thereafter disappeared for some time until recently again appearing. That said child has been in the care, custody and control of the said Mrs. Louise Jacobi for over two months and should remain in her care, custody and control in order that adequate provision, homelife and guardianship may be provided for such infant.

"As aforesaid, affiant makes this affidavit on information and belief and for the purpose of having the Juvenile Court of St. Tammany Parish, Louisiana, decree and declare said child to be neglected and to award the care, custody and control of said child to said Mrs. Louise Jacobi, wife of Joseph Jacobi, according to law."

The statement in the affidavit that Mrs. Brockner gave Mrs. Jacobi her child and disappeared for some time until recently again appearing is refuted not only by the sworn allegations of her application for writs herein, which are not disputed, but also by the consistent and persistent efforts made by Mrs. Brockner to regain the possession of her child.

The affidavit of the Probation Officer, dated October 16, 1944, on which the order of the Judge of the Juvenile Court was issued and under the authority of which the child was seized and taken possession of by the deputy sheriff of the Parish of St. Tammany in the home of Mrs. Brockner, in the City of New Orleans, is couched in the same general language as the affidavit of Au-

gust 11, 1944, with the additional averment that the mother of the child "is not a fit or proper person for the care and custody of the child, particularly because she stands charged with crime in the 22nd Judicial District Court for this parish" (St. Tammany); and that "after permitting the custody of said child to be with Mrs. Joseph Jacobi, and her husband, reputable citizens of St. Tammany Parish, for some months, and pending investigation by the Probation Officer and the Public Welfare Department of the State of Louisiana of the fitness of said mother to regain possession of such child, said mother as principal with one Dalton R. Matheny did, by force of arms and through commission of a serious crime, enter the home of said Mrs. Joseph Jacobi and forcibly remove and secrete said child."

As stated in the affidavit, its purpose was to have the Juvenile Court decree the child to be neglected and to award the care, custody and control of the child to some fit and proper person or institution in the jurisdiction of the court. Affiant alleges that any summons to produce the child before the court would be ineffectual and that it was necessary for the court to issue a warrant for the arrest of the child in order that it might be brought before the court for proper disposition, and that pending trial the court should place the child in the custody of some person, institution or association deemed proper in the judgment of the court. Affiant further alleges that Mrs. Brockner, the mother of the child, should be summoned to appear and answer the charge and, if necessary, a warrant should be issued for her arrest for contributing to the neglect of the child. At the time this affidavit was made and the order of court thereon rendered and executed, Mrs. Brockner was actually imprisoned in jail in St. Tammany Parish and her child was at her home in the City of New Orleans. Although it is stated in the affidavit that the child should be placed by the court in the custody of some person, institution or association pending its disposition, Mrs. Jacobi accompanied the deputy sheriff of St. Tammany Parish when he seized the child in the City of New Orleans, and she secured possession of the child from the sheriff after he carried it back to the Parish of St. Tammany.

■ The crime, referred to in the affidavit of the Probation Officer with which Mrs. Brockner was charged, grew out of the occurrence of October 7, 1944, when Mrs. Brockner, accompanied by a male escort, went to the home of Mrs. Jacobi in Madisonville in order to obtain possession of her child and, in the course of an altercation with the Jacobis, produced a pistol in order to protect herself from an attack by the Jacobi dog to which she had been subjected on the previous visit. The alleged criminal charge, which was based solely on an affidavit made by the Jacobis, does not involve any criminal offense, since Mrs. Brockner is herself a mere child, being only sixteen years of age and if she were guilty of any offense at all on the occasion referred to, it would be a mere delinquency and not a crime. State v. Connally, 190 La. 175, 182 So. 318, and authorities therein cited. In

the letter of the District Attorney of St. Tammany Parish, dated January 29, 1945, addressed to one of the attorneys for Mrs. Brockner, he shows that he recognizes this to be so since he states that he has not filed a bill of information against Mrs. Brockner because of the fact that she is a juvenile.

Act 83 of the Extra Session of 1921 creates juvenile courts throughout the State (Parish of Orleans excepted) and defines their jurisdiction. In section 6 of the act, the term "neglected child" is defined to be any child seventeen years and under, found destitute, or depending on the public for support, or without proper guardianship, or whose home, by reason of the neglect, cruelty or depravity or indigence of its parents, guardians or other persons, is an unfit place for such child, etc.

■■ Juvenile courts are courts of limited jurisdiction and an affidavit charging the juvenile with being a neglected child should set forth the facts and circumstances necessary to sustain the charge and to show that it is cognizable in the juvenile court. Under section 6 of Act 83 of 1921, Ex.Sess., when a child is charged with being neglected, the affidavit must show that the child is seventeen years of age or under, and the affidavit must briefly set forth in general terms the facts constituting the said neglect or delinquency. State v. Renaud, 157 La. 776, 103 So. 101.

■ The affidavit dated October 16, 1944, filed by the Probation Officer at the instance of Mrs. Jacobi represents nothing more than an attempt on the part of Mrs.

Jacobi to try, as between her and Mrs. Brockner, the right to the custody of the infant child of Mrs. Brockner. The mere fact that Mrs. Jacobi is better able financially to take care of Mrs. Brockner's child would not warrant the court in refusing to recognize the right of Mrs. Brockner to the custody of her child. Nor should she be deprived of the custody of her child because she called at the home of Mrs. Jacobi and removed the child therefrom, since Mrs. Jacobi herself was attempting to hold the child against the wishes of its mother.

■ So far as the affidavit alleges that Mrs. Brockner is not a fit or proper person to have the custody of her child, the allegations represent nothing more than the conclusions of the affiant based on information received from Mrs. Jacobi. No facts are set forth in the affidavit which show that Mrs. Brockner is not a proper person to retain the custody of her child.

■ The child was born in New Orleans and resided with her mother in New Orleans at the time she was placed in the temporary care of Mrs. Jacobi, which took place in New Orleans. At the time the affidavit of the Probation Officer, dated October 16, 1944, was filed and the order of the Juvenile Court was issued thereon, the child was actually residing with its mother in the City of New Orleans where the order of the Juvenile Court was executed by the deputy sheriff seizing the child and removing it to St. Tammany Parish. The fact that the child, with the consent of her mother, was at one time temporarily in the custody of Mrs. Jacobi does not vest

the Juvenile Court of St. Tammany Parish with jurisdiction of this case.

As an ancillary proceeding to her application for habeas corpus, Mrs. Brockner invoked the supervisory jurisdiction of this court. And it is well settled that in the exercise of that jurisdiction this court has the power to inquire into the jurisdiction of inferior courts and into the validity of their proceedings. Constitution 1921, Art. 7, secs. 2 and 10; Code of Practice, Arts. 845, 855 and 856; Runkel v. Auto Repair & Garage Co., 147 La. 1030, 86 So. 483; Lavoy v. Toye Bros. Auto & Taxicab Co., 159 La. 209, 105 So. 292; In Re Perez, 197 La. 334, 1 So.2d 537.

Our conclusion is that the Juvenile Court for the Parish of St. Tammany lacks jurisdiction to entertain and dispose of the issues involved in this proceeding, and hence, no satisfactory result could be obtained by denying Mrs. Brockner the relief she seeks in this court and thereby compel her to appear in the Juvenile Court for St. Tammany Parish for the purpose of contesting the jurisdiction of that court.

For the reasons assigned, the rule nisi herein issued is made absolute, and accordingly the Judge of the Juvenile Court and the Probation Officer of the Parish of St. Tammany are prohibited from proceeding further with the matter entitled State of Louisiana v. Bertha Ann Brockner, pending in said Juvenile Court. It is further ordered that the Probation Officer and the Welfare Society of St. Tammany Parish and Mr. and Mrs. Joseph Jacobi forthwith release and restore the

custody of the child, Bertha Ann Brockner, to her mother, Mrs. Lorell Smith Brockner.

PONDER, J., dissents.

HAMITER, J., dissents and assigns written reasons.

HAWTHORNE, J., concurs in decree.

HAMITER, Justice (dissenting).

Under the provisions of Act 83 of (E.S.) 1921 (Dart's General Statutes, Section 1683) the Juvenile Courts of this state, outside of the Parishes of Orleans and Caddo, are vested with jurisdiction of the trial of all those charged in said courts as neglected children.

A neglected child, as defined in Section 6 of that Act (Dart's General Statutes, Section 1684), is "* * * any child seventeen years of age, and under, not now or hereafter inmates of a State Institution, found destitute, or dependent on the public for support, or without proper guardianship, or whose home, by reason of the neglect, cruelty, depravity or indigence of its parents, guardians, or other persons, is an unfit place for such child, or having a single surviving parent undergoing punishment for crime, or found wandering about the Streets at night, without being on any lawful business. * * *"

The procedure to be followed in the juvenile courts respecting neglected children is outlined in such statute's Section 7 (Dart's General Statutes, Section 1685), it

reading in part: "* * * All proceedings against neglected * * * children *shall be by affidavit* made before the Clerk of Court or any committing magistrate, by any reputable person, *charging the child with being neglected * * * and briefly setting forth in general terms the facts constituting said neglect * * *; and when made by the District Attorney, or a probation officer, may be upon information and belief. Upon the filing of such affidavit, the Court, shall issue a summons to the person having the custody of such child, to appear with the child on the day following the service of such summons;* and failure to comply with the order of the Court shall subject the person summoned to punishment as in case of contempt. *Whenever it shall appear to the Court that said summons has proven or is likely to be proven ineffectual, or whenever the Court in its discretion considers it expedient, a warrant may be issued* for the arrest of the person with whom the child may be, or *for the arrest of the child itself. Pending the trial, the Courts throughout the State, may permit the child to remain in the possession of the person having the custody of said child, or may place it in the custody of any person, association, or institution deemed proper in the judgment of the Court.* * * *"" (Italics ours.)

The referred to Probation Officer holds his position through appointment by the Juvenile Judge, and he is invested with all the power and authority of a sheriff to make arrests and to perform other duties incident to his office. Sections 3 and 4 of Act 83 of (E.S.) 1921, Dart's General Statutes, Section 1681 and 1682.

On October 16, 1944, the Probation Officer of St. Tammany Parish, strictly in keeping with the procedure outlined above, filed an affidavit in the court of that parish charging the child Bertha Ann Matheny Brockner with being neglected and briefly setting forth in general terms the facts constituting the neglect. The affidavit, as the act authorizes to be done, was made upon information and belief. Whereupon the judge, as was his mandatory duty, issued a summons to the mother to appear and show cause why the child should not be declared neglected; and at the same time, under the statute's provisions, he ordered the arrest of the child who was then in the City of New Orleans and gave temporary custody of it to a person deemed proper and suitable in his judgment.

Immediately thereafter, the mother, without in any manner pleading or appearing in the Juvenile Court of St. Tammany Parish, applied to this court for the issuance of the writs of prohibition and habeas corpus, predicating her application on the sole contention that the Juvenile Court lacked jurisdiction of the cause. On the showing made, we issued a rule nisi and the writ of certiorari, thus bringing the matter before us.

Contrary to the decision rendered by us on the original hearing of the rule nisi, which was that the Juvenile Court must first pass upon the matter of its jurisdiction before relief is sought here, a majority of this court on this rehearing have deter-

mined and decreed that the Juvenile Court was without jurisdiction and, accordingly, have issued the writs for which relatrix prayed.

The effect of the decision on rehearing, as I view it, is to overrule the well-established jurisprudence of this state, the latest case of which is In Re Sherill, 204 La. 1096, 16 So.2d 885, that announces the doctrine that this court will not issue a writ to a court of inferior jurisdiction, prohibiting further proceedings in a case because of alleged want of jurisdiction, until a plea to the jurisdiction has been presented to and overruled by that court.

The majority opinion on rehearing gives recognition to the mentioned well-established jurisprudence and doctrine; but it declares that this case, because of its nature and the situation of the parties, is exceptional and therefore authorizes an original application to this court for habeas corpus. One of the reasons given in support of that declaration is the following: "The case, under the facts disclosed by the record, impresses us as one in which Mr. and Mrs. Jacobi, who are not related either by blood or affinity to Mrs. Brockner or her infant child, are seeking through the instrumentality of the courts and social agencies of the State to deprive Mrs. Brockner of her child in order to secure the child for themselves. Thus, the affidavit of the Probation Officer of date August 11, 1944, made solely on information obviously furnished by Mr. and Mrs. Jacobi, or both, charges that the infant child of Mrs. Brockner is a neglected child. * * *"

Whether or not that impression or conclusion represents the true situation I am not prepared to say. It springs solely from the allegations of the application of relatrix and from certain statements made by the Probation Officer in his affidavits. There is no evidence in the record to support it, the reason being that no trial has ever been held. But I do insist that the consideration and determination in the first instance of a charge of that kind—that is one by the parent in a neglect case that some one else is trying to secure the child for himself—is for the Juvenile Court, not for this court. Similar charges are frequently made in cases of this nature, and, even if true, they do not render the proceedings exceptional to the extent of warranting our entertaining original jurisdiction. Juvenile courts certainly are capable of handling that situation originally.

In the Sherill case, cited supra, and which arose in the Juvenile Court of Caddo Parish, relatrix, a resident of Baton Rouge, charged in her application made to this court for the writ of prohibition that the action of Mrs. Delaune in signing and executing the neglect affidavit was a deliberate attempt to deprive her (relatrix) of her child's custody; and the documents attached to the application tended to support the correctness of that charge. But we refused to grant the relief requested since relatrix had not previously posed the jurisdictional question in the Juvenile Court. True, in that case, relatrix did not pray for the issuance of the writ of habeas corpus; however, we could and would have

issued it under her prayer for general relief, or perhaps ex proprio motu, if the circumstances and nature of the case had warranted that action.

The other exceptional feature of this case, asserted by the majority opinion on rehearing, is that the affidavits of the Probation Officer do not set forth any facts constituting the neglect charged to the child, as is required by the Juvenile Court statute. In the Sherill case, cited supra, relatrix, in her application to this court, contended that the affidavit did not charge the existence of any one of the numerous conditions set forth in the statute by which a minor is judicially determined to be a neglected child. Our answer to that was: "* * * Even if it be conceded that Mrs. Delaune's affidavit is defective as relator claims, we are now powerless to grant the relief for which she prays; this is because of her failure to raise the jurisdictional question, and obtain a ruling thereon, in the court of first instance."

Besides overruling the prior jurisprudence of this state, as above pointed out, the majority decision on rehearing, in my opinion, constitutes an implied invitation to anyone hereafter challenging a juvenile court's jurisdiction in a child neglect case to invoke the original and supervisory jurisdiction of this court without obtaining a ruling on the jurisdictional issue in the inferior court. I cannot and will not lend approval to that.

For these reasons, and for those assigned in the opinion rendered on the original hearing, I respectfully dissent.