TATE, Judge.
By petition filed in this Court, relator applies to the original jurisdiction of this and other appellate courts to issue writs of habeas corpus “in behalf of any person in actual custody in cases' within their respective jurisdictions”, Article 7, Section 2, Louisiana Constitution, LSA. Relator is confined at the East Louisiana State Hospital for the mentally ill at Jackson, Louisiana',' under a civil commitment order, and[1] alleges that he is presently sane and entitled to release therefrom.
The application and .supporting documents show that relator was committed “as being mentally ill to the Ward for the criminal insane at the East Louisiana State Hospital at Jackson, Louisiana,” by the First Judicial District Court of Cad-do Parish on December 17, 1948, under a civil commitment order based upon certificate of coroner and physicians and after personal discussion with relator, Civil Docket No. 101,513.
Relator alleges in his petition and supporting documents that he had been sen *790 tenced by the City Court of Shreveport, Louisiana, for four consecutive terms of 90 days each for breach of the peace (or assault), and had commenced serving his sentence for these misdemeanors in the city jail at Shreveport shortly before being committed to the ward for the criminal insane at Jackson in East Feliciana Parish, where he has remained for the last nearly seven years. He alleges that he has recovered his sanity and is entitled to release; and further is entitled at least to transfer to the less restraining civil wards, his sentence for his misdemeanor having been long since completed; and further, being a veteran of World War I, that he is entitled to transfer to a Veterans’ Administration Hospital, where he can receive treatment.
It is well settled that judicial commitment of a mentally ill person under LSA-R.S. 28:53, and related sections, is a civil exercise of the State’s police power; and it is neither a criminal proceeding, nor a formal interdiction proceeding affecting the property rights of the person committed; In re Bryant, 214 La. 573, 38 So.2d 245, Id., La.App., 30 So.2d 233; Nash v. Bowden, 178 La. 602, 152 So. 305; Oliver v. Terrall, 152 La. 662, 94 So. 152; Vance v. Ellerbe, 150 La. 388, 90 So. 735.[1]
Appeals from civil commitment orders and proceedings ancillary thereto are properly vested in the Courts of Appeal, In re Bryant, La.App., 29 So.2d 252; later reported on merits by Orleans Court of Appeal and Louisiana Supreme Court, see citations above.
Properly speaking, of course, the present proceeding is not a review of a civil commitment order. It is an application for a writ of habeas corpus, on the ground that the person committed has recovered his sanity following the commitment.[2] In such instance, a writ of habeas corpus is an appropriate remedy.[3] It is undoubtedly true that the 20th Judicial District Court, with jurisdiction over the East Louisiana State Hospital has authority herein to issue a writ of habeas corpus, Article 792, Code of Practice.
As held by our Supreme Court in State ex rel. Futch v. Rockett, 136 La. 1091, 68 So. 189, in an opinion comprehensively discussing the original jurisdiction of the Courts of Appeal in habeas corpus proceedings, the original jurisdiction of the courts of appeal to issue writs of habeas corpus is concurrent with that of the District Courts within their jurisdictions; but the resulting decrees are limited to matters within their appellate jurisdictions and cannot infringe upon the appellate jurisdiction of the Supreme Court. In the Futch case it was also held that the Supreme Court had appellate as well as *791 original jurisdiction in habeas corpus cases, and thus could review the decrees of the inferior courts issuing or denying writs of habeas corpus.
Under the reasoning of the Futch case, the Courts of Appeal also have appellate as well as original jurisdiction of writs of habeas corpus. The Courts of Appeal have jurisdiction of all appeals of which the Supreme Court is not given jurisdiction, Article 7, Section 29. Since habeas corpus cases may concern deprivation of a civil liberty or right in proceedings in which the monetary value thereof is not affirmatively shown to exceed $2,000, the Courts of Appeal would have jurisdiction of such latter cases; Article 7, Section 10 and Section 29, Louisiana Constitution. Such appeals, of course, are subject to the same limitations as other appeals, including that they be from final judgments.
We have thus determined that we have the power and the jurisdiction to issue and to determine a writ of habeás corpus under the allegations of the petition filed with us.
We are now confronted with the determination as to whether' we are under a mandatory duty to issue said writ of ha-beas corpus.
Article 800, Code of Practice, provides:
“The judge to whom this petition is presented, if he has the power of issuing a habeas corpus, shall immediately grant one to the petitioner, unless it appears by the petition itself, or by the documents annexed to it, that the party can not be set at liberty, nor admitted to bail.”
See also LSA-R.S. IS :121, of similar purport concerning writs of habeas corpus issued in criminal proceedings.
Our Supreme Court has recently .remarked that “clearly” it is the duty of the judge to issue a writ of habeas corpus when a'prima facie case is made out in a petitioner’s application. See State ex rel. Doran v. Doran, 215 La. 151, 39 So.2d 894 at pages 895-896.[4]
As there remarked, 39 So.2d 896, “The writ of habeas corpus, originating in the common law. but guaranteed under the federal and state constitutions, is designed as a speedy and efficient method of affording a judicial inquiry into the legality of the restraint under which a person is held. It is not controlled by the procedure pursued in the ordinary litigation but by the specific procedure outlined in the Code of Practice.”
Nevertheless, this mandatory duty of the courts to issue writs of ha-beas corpus upon a prima facie showing, ’ is subject to some qualification. There •should be a showing that other legal release is not available or . practicable, see State v. Brockner, 207 La. 465, 21 So.2d 499, at page 506; State ex rel. Aucoin v. Aucoin, 174 La. 7, 139 So. 645, State v. Woods, 154 La. 631, at page 635, 98 So. 47;[5] and as to appellate courts, in view of their primary appellate function, our Supreme Court has held that they may decline to issue the writ, referring the matter to the district court or courts with original jurisdiction, State v. Brockner, 207 La. 465, 21 So.2d 499, at page 506 (see also 21 So.2d 501); State ex rel. Haas v. Sisters of Convent of the Good Shepherd, 181 La. 628, 160 So. 121; Ex parte Ryan, 124 La. 356, 50 So. 385, Id., 124 La. 286, *792 SO So. 161. In Ex parte Ryan, on the subsequent hearing at 124 La. 356, at page 369, SO So. 385, the Supreme Court indicated that upon a showing that the appropriate district court refused to issue a writ of habeas corpus in an application to the original jurisdiction of the appellate court to issue a writ of habeas corpus, that a mandamus decree ordering, the appropriate lower'court to perform its duty could appropriately be issued.
In the exhibits attached to relator’s petition filed with this Court, it is indicated that on May 28, 1954, the First Judicial District Court of Caddo Parish (which committed relator) refused his petition for a writ of habeas corpus on the ground that it did not have jurisdiction to issue such writ' against an individual or institution domiciled out of Caddo. Parish. On June 26, 1954, the 20th Judicial District Court having jurisdiction -of the East Louisiana State Hospital where relator is confined denied his application for a writ of habeas corpus because relator did ' not furnish with such petition evidence from a medical expert of his own choosing certifying to his present sanity. Petitioner alleges that having been incarcerated for nearly 7 years, he has resources to hire neither an attorney nor a physician. Petitioner comments as' to’ this ruling: “It looks to me * * * that I am and have been held in-a man-made hell because I am not able to hire proper doctors and'counsel to defend me.”
W’e have decided to deny petitioner’s application for a writ of habeas corpus and to deny it on the ground that he has not made a showing that he has exhausted legal- remedies- available to him other than a writ of habeas corpus,- or that such remedies are not practicable to secure him relief: We are doing this for; although we have the constitutional authority to issue writs of habeas corpus and to determine the issues presented thereby in cases similar to these, we feel that this original jurisdiction must-of necessity be exercised very sparingly and only on a showing of special circumstances indicating that adequate relief is not otherwise available. Appellate courts such as .this have not adequate facilities to exercise this original jurisdiction, ordinarily are not as 'convenient to the parties as the appropriate district courts, and further could not entertain many such hearings without neglecting their primary function of disposing of appeals.
Relator has showed that he applied to the First Judicial District Court of Caddo Parish for a writ of habeas .corpus, which application the court declined to consider for the reason it lacked jurisdiction over the defendant institution. There is no showing that he applied to the First Judicial District Court for a modification or rescission -of -the judgment committing him. It may.be added that he was apparently committed under authority of LSA-R.S.. 28:59 as having become mentally ill after he commenced serving • sentence; as such, he was apparently committed to the criminal ward under authority of LSA-R.S. 28:25, providing places of confinement for patients. convicted, of a misdemeanor who require special protection and restraint. Relator alleges .that because of his confinement to the criminal ward rather than the civil ward, although his misdemeanor sentences have long since expired, he has been unable .to secure his transfer to the civil part of the hospital or to facilitate his transfer to a Veterans’ Administration facility for hospitalization and treatment.
It must first be observed that the committing court has authority to discharge any cured patient if the discharge is in the best interest of the patient and the public, after notice - to the confining institution, LSA-R.S.-28:98: ■ Thus a patient may secure review at any time in the court which committed him of his present condition, and’there is*no showing that the relator herein has attempted to secure this review.
In addition, under the circumstances of confinement under the provisions of LSA-R.S. 28:59 as having become mentally ill while serving sentence, the First Judicial District -.Court (the committing court) alone has authority to: ’ (a) approve transfer of thé patient “under sentence” from *793 the criminal ward to the civil ward, LSA-R.S. 28:59; (b) approve transfer of person “under sentence” from one" mental institution to another, LSA-R.S. 28:94 A(2) ; (c) [6] approve discharge of cured patient by superintendent which discharge otherwise lies within his authority, LSA-R.S. 28:96 B.[7] Similarly the patient may not be transferred as desired by relator herein to a Veterans’ Administration Hospital, without the consent of the committing Court,.if he has been committed pursuant to a conviction of any misdemeanor, LSA-R.S. 28:93, 29:368 C.[8]
Thus it would appear that the committing court, the First Judicial District Court, retains jurisdiction of the commitment of relator, and is authorized to afford him the relief requested upon proper showing. Of course, if petitioner has recovered his sanity, he is entitled as o.f right to release, since his -was a civil 'rather than a criminal commitment, and under LSA-R.S. 28:59 the seven years commitment in the asylum has more than satisfied the original 90-day jail sentences.[9]
In all fairness, however, it .may be-admitted that to require this penniless relator confined in East Feliciana' Parish to file . appropriate proceedings in the distant Caddo Parish, possibly requiring consultation with 'an attorney to represent him in the Caddo Parish District Court, and possibly requiring the production of medical evidence concerning his present condition before the Caddo Parish District Court, may not be a practical remedy. There is no showing, however, that such relief' has been requested by petition to the committing court, but that such relief was not practical.
"I-n view of our remarks above concerning the- duty of a court to -issue a writ of habeas corpus and allow an allegedly illegally confined patient or prisoner a hearing as to the legality of his confinement upon presentation of ¿ prima facie case, we feel we should remark briefly that we have not decided; whether or not the mere statement by a person civilly -confined as mentally ill that he has recovered his sanity presents to a court a prima facie case. For on the one hand, perhaps it may be presumed that the commitment would not have continued if he had recovered his sanity. By common repute at least, most mentally ill persons feel that they are sane' and that their actions are justifiable. /Perhaps the allowance of writs of habeas corpus upon such self-serving declarations would greatly inconvenience the administration of the mental institution, as well ás unduly burden the district .court with jurisdiction ' over, said mental institution. For unless the mental institution admitted the sanity of. relator, ordinarily - the District Court would be faced with the testimony of the relator that he had recovered his sanity, as opposed to the testimony of objective experts that he was still mentally deranged. The granting of a writ would be automatically followed *794 after hearing by its annulment and the continued commitment in the institution.[10]
Yet on the other hand, great and fundamental principles of liberty are at stake, for the writ of habeas corpus was designed to strike like lightning any illegal detention of any person, including those suspected of insanity. Perhaps, the inconvenience to be caused the administrators of the institutions and the court concerned, is the price to be paid to allow each human soul under American law the absolute right to immediate judicial investigation of the legality of his detention by the State or by others. (Also, see LSA-R.S. 28:171(6) guaranteeing to every mental patient the right to the writ of habeas corpus.)
It should be added that the writ of habeas corpus should be verified by an affidavit under oath of the relator that the allegations thereof are true and correct, sworn to and subscribed before a notary public, LSA-R.S. 15:117; Code of Practice Article 799. However, in view of the allegations contained that the authorities were inhibiting relator from filing this application for a writ of habeas corpus, the absence of this requirement is not fatal. With regard to those allegations, it is not readily conceivable that any officer or employee of the State would violate the-mandatory directive of the Legislature that all mental patients should have free access to the Courts, LSA-R.S. 28Ú71.[11]
For the above and foregoing reasons, the application of relator for issuance of a writ of habeas corpus is denied, without prejudice to his application for appropriate relief to the District Court or Courts of competent jurisdiction.

. See also Interdiction of Gasquet, 136 La. 957, 68 So. 89, concerning a commitment under the criminal jurisdiction of the court, presently LSA-R.S. 15:207, 268; in this latter case the Courts of Appeal would not have original jurisdiction to issue writs of habeas corpus, since criminal cases are not within its appellate jurisdiction. See State ex rel. Futch v. Rockett, 136 La. 1091, 68 So. 189.

. Code of Practice, Article 822: “If it appear to the judge, from the return to the writ or from the accompanying documents, that the party is confined by the order of some tribunal, he can only restore such party to liberty in the following cases:
“1. When such tribunal has exceeded its jurisdiction, as defined by law;
“2. Where the original imprisonment was lawful, but by some act, omission or event which has since occurred, the party becomes entitled to his liberty; * * (Italics ours.)
See also LSA-R.S. 15:137(1) and (2), concerning writ of habeas corpus for release under criminal process.

.See Oliver v. Terrall, 152 La. 662, 94 So. 152: “If still confined, his remedy is by habeas corpus to obtain his release.” 152 La. 662, at page 665, 94 So. at page 153; see also 39 C.J.S. Yerbo, Habeas Corpus, Insane Persons, § 48, p. 588. “Subject to certain qualifications, habeas corpus will lie to discharge a person, confined as insane, who is, at the time of the habeas corpus proceeding, sane; and it will lie to attack a commitment for defects which render it void, although not for mere irregularities.”

. See 39 O.J.S. Verbo, Habeas Corpus, § 82, p. 637: “ * * • * Usually, however, where the petition is sufficient, and makes a prima facie case entitling petitioner to relief, the writ should issue, and the grounds of the imprisonment should be investigated, and, in some jurisdictions, the •writ must be issued where the petition, otherwise sufficient, does not show on its face that the petitioner is not entitled to relief.”

. See 39 C.J.S. Verbo, Habeas Corpus, § 7 a, p. 437: “The writ of habeas corpus ordinarily will not be granted where there is another adequate remedy.”

. We are assuming, without deciding, that a patient civilly committed under LSA-R.S. 28:59 is still “under sentence” any time after his commitment if committed while serving sentence; it can be argued that since this section provides “The period of commitment shall be credited against the sentence imposed by the court”, then the patient committed is no longer serving sentence, or “under sentence”, after expiration of the criminal sentence, see 43 Words and Phrases, Under Sentence, p. 105.

. If the institution refuses to release an inmate, the Department of Institutions itself may order the examination and discharge of the patient in all cases except where the patient has been committed under LSA-R.S. 28:59, see LSA-R.S. 28:97.

. However, such commitment in a Veterans’ Administration Hospital may not be made unless the Veterans’ Administration or other appropriate United States Agency certifies that the facilities are available for care of such person and that such person is eligible for such care and treatment. LSA-R.S. 29:368 A, 0; see also LSA-R.S. 28:62.

. It is otherwise in criminal commitments under LSA-R.S. 15:267; which the Mental Health Law, Title 28, specifically does not affect, LSA-R.S. 28:58.

. Since this is a civil rather than a criminal habeas corpus proceeding, it would appear that Code of Practice Article 811 rather than LSA-R.S. 15:127 governs, see State ex rel. Doran v. Doran, 215 La. 151, 39 So.2d 894; and therefore, confinement being by virtue of a judgment of Court, the confining authorities are relieved of the necessity of bringing the actual person of the relator before the Court, unless specifically so directed by the Court issuing the writ, C.P. Article 811.

. LSA-R.S. 28:171 provides in part:
“Every mental patient is guaranteed the following rights:
“(1) To communicate in private with counsel or with the director or an agent of the department.
********
“(5) To be furnished with writing materials and a reasonable opportunity, at the discretion of the physician in charge, for communicating with any person or persons. His communication shall be censored, stamped, and mailed by the institution.
“(6) To the writ of habeas corpus. • * * >>